**SELECTIVE INSURANCE COMPANY,**
an Ohio Corporation, Plaintiff,

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY,** a Connecticut Corporation, Defendant.

Civ. A. No. 21105.

United States District Court
E. D. Michigan, S. D.

Jan. 16, 1963.

William J. Giovan, Detroit, Mich., for plaintiff.

John Feikens, Feikens, Dice, Sweeney & Sullivan, Detroit, Mich., for defendant.

ROTH, District Judge.

This is an action, brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which the parties have submitted upon a stipulation of facts.

Some time before May 11, 1959, William Haidy, doing business as the Kreem-Rich Cheese Company, obtained a policy of comprehensive liability insurance from the plaintiff, Selective Insurance Company, and a policy of automobile insurance from the defendant, Hartford Accident and Indemnity Company.

On or about May 11, 1959, Curtis Sharp, an employee of the insured, drove a vehicle owned by the insured to the location of a Wrigley Store, located at Trumbull and Grand River Streets in Detroit, Michigan, for the purpose of making deliveries of dairy products. The truck involved was insured under the automobile insurance policy issued by the defendant. Deliverymen could obtain admission to the rear of the Wrigley Store

only by ringing a bell and having a locked steel door opened from within by a Wrigley employee. Sharp rang the bell and was admitted to the store by Jeannette Liford, an employee of Wrigley, who gave Sharp an order for dairy goods. Sharp returned to his truck, made up the order, and then made two or three trips into the store with the merchandise. After the merchandise was brought into the store, Jeannette Liford signed the delivery ticket and Sharp started to leave the Wrigley premises. As he was leaving the establishment, with the intention to close his truck and continue to his next stop, Sharp pushed the steel door closed behind him, as was his custom. As a result of the act of Sharp in pushing the door closed, Jeannette Liford, the Wrigley employee, in some manner sustained an injury when the door slammed on her finger. She later instituted a suit in the Circuit Court for the County of Wayne, Michigan, for personal injuries against the insured. Her suit is presently pending in said court.

The plaintiff is defending the Circuit Court action brought against the insured, but has tendered the defense to the defendant. The defendant, for its part, has declined the tender on the ground that the occurrence in question is not within the coverage of its automobile insurance policy.

The issues which have been stipulated to by the parties are as follows:

(a) Did the injury to Jeannette Liford on or about May 11, 1959, arise out of the use of an automobile including the loading or unloading thereof, as defined in the Hartford Accident & Indemnity Company policy of automobile insurance?

(b) Does the defendant Hartford Accident & Indemnity Company have coverage in this instance, under its automobile policy for William Haidy, doing business as Kreem-Rich Cheese Company, and for Curtis Sharp as an omnibus insured under the Hartford Accident & Indemnity Company automobile policy?

(c) Is the defendant Hartford Accident & Indemnity Company policy of automobile insurance the primary insurance with respect to the injuries sustained by Jeannette Liford on or about May 11, 1959?

(d) What are the respective obligations as between the plaintiff Selective Insurance Company and the defendant Hartford Accident & Indemnity Company as to the duties of defense, and as to any liabilities that may be incurred as the result of the personal injury action instituted by Jeannette Liford?

The language of the automobile policy with which we are concerned is as follows:

"* * * caused by accident and arising out of the ownership, maintenance or use of the automobile." And "Use of the automobile for the purpose stated includes the loading and unloading thereof."

The courts which have had occasion to deal with the coverage included under the phrase "loading and unloading" are many. Generally, the courts have adopted one of two views: the restricted "coming to rest" doctrine or the liberal "complete operation" doctrine. An exhaustive annotation on this subject can be found in 160 A.L.R. 1259. In a well-reasoned opinion, the Chief Judge of this District, the Honorable Theodore Levin, considered the problem in connection with a factual situation to which the factual situation in this case is, in this Court's opinion, complementary. Perhaps not curiously, both parties here point to Judge Levin's opinion in Allstate Insurance Company v. Valdez, 190 F. Supp. 893 (E.D.Mich.1961), as support of their respective positions. Defendant interprets Allstate to limit coverage to "movement of the article." This is contrary to the assertion by Judge Levin that (p. 895):

"* * * The adoption by the majority of the courts of the 'com-

plete operation' doctrine appears to me to be based upon the better reasoning."

Without a tiresome review of the cases which follow the "complete operation" rule, and the logic upon which they rest, we say simply that we too are persuaded that this is the proper construction to be placed upon the phrase "loading and unloading."

■ A case in which the factual situation is very similar to the instant case is Maryland Casualty Company v. Tighe (1939; DC) 29 F.Supp. 69, affirmed in (1940; CCA 9th) 115 F.2d 297.

In the Tighe case, an employee of the insured carried vegetables from his parked truck into a building for delivery. Returning to his truck for another load of vegetables, the employee ran into and injured a person. The Court held that the injury was within the scope of the policy. The policy was almost identical to the policy involved in our case in that it covered damages " 'arising out of the ownership, maintenance or use of the automobile,' 'including the loading and unloading thereof.' " The major difference between Tighe and this case is the fact that in Tighe, the driver contemplated making one or more additional trips into the store, while in our case, the driver had intended to close up his truck and leave. In both cases, however, the employee was returning to his truck and was not actually handling any goods.

We feel that the factual differences between the two cases are minor and not legally significant. The rationale of the holding in Tighe was that the accident occurred while the process of unloading was in operation.

A hypothetical case may be posed to show the lack of logic in allowing the termination of unloading to be controlled by the termination of movement of the articles unloaded. If the body of a dump truck is raised to discharge a load of gravel and one is injured while the body is lifting, then under any theory the accident occurs during unloading. If a second person is injured as the body is being lowered—after the gravel is stationary on the ground—can we say that the accident did *not* occur during unloading? Under defendant's theory, this result would be mandatory because the "movement of the article" has ended.

Mr. Sharp was returning to his truck after his delivery slip had been signed. He was not completely through his delivery process, however. Without making any deviation, he proceeded to go directly to the truck with the intention of closing the steel door, as was his custom, closing his truck door, as was his duty, and re-entering the cab for continuation. We find that at the time of the accident, the unloading was incomplete.

It seems to us, as we pointed out above, that the factual situation here is complementary to that in Allstate. There the court was dealing with "preparatory" steps in the process of loading—here we are dealing with the consummation of the "unloading" process. The closing of the rear door of the Wrigley Store in this case is analogous to the replacing of the coal chute cover in Maryland Casualty Company v. Dalton Coal and Material Company, 81 F.Supp. 895 (DC Mo.1949), affirmed in 184 F.2d 181 (8th Cir., 1950).

The answers to the first three issues presented are in the affirmative, and the Court concludes that the defendant, Hartford Accident & Indemnity Company has the duty of defense in the personal injury action instituted by Jeannette Liford in the Circuit Court for the County of Wayne, Michigan, and it shall bear the liabilities, if any, which may properly be assessed therein. Plaintiff may prepare and submit a judgment order in accordance with this opinion and shall have its costs in this proceeding.