MARSHALL v ROADWAY EXPRESS, INC

Docket No. 82672. Submitted June 18, 1985, at Detroit.—Decided November 4, 1985.

Plaintiff, James Marshall, a truck driver for Roadway Express, Inc., drove his tractor-trailer to Roadway's terminal and began unhitching the trailer. When plaintiff unhooked the brake lines, the tractor rolled forward, striking plaintiff down and injuring him. Plaintiff applied for and received workers' compensation benefits from Roadway. Plaintiff then applied to Roadway for no-fault benefits. Roadway denied the claim. Plaintiff then brought an action in the Wayne Circuit Court against Roadway and Citizens Insurance Company of America, the no-fault insurer of plaintiff's privately-owned automobile, seeking no-fault benefits. The trial court, Sharon Tevis Finch, J., issued an order granting the defendants' motions for summary judgment, finding that plaintiff was barred from receiving no-fault benefits since he was in the unloading process when the injury occurred and he was performing mechanical work. Plaintiff appeals from that order. *Held:*

1. The trial court improperly found that the plaintiff was unloading the vehicle when the accident occurred. There is no evidence that detaching the trailer in any way aided the unloading process. Plaintiff was not unloading the trailer when the accident occurred.

2. Plaintiff was not performing mechanical repair or maintenance work when injured. The detaching of the trailer was not "mechanical work" as that term is used in § 3106(2) of the no-fault act.

Reversed and remanded.

1. INSURANCE — NO-FAULT INSURANCE — LOADING AND UNLOADING — PARKED VEHICLES — JUDICIAL CONSTRUCTION.

The terms "loading" and "unloading" a parked vehicle have been

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Automobile Insurance §§ 340-368.

Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.

[2] Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

interpreted broadly to include activities preparatory to the actual lifting onto or lowering of property from a parked vehicle for purposes of subsection 3106(2) of the no-fault act which provides for the denial of benefits in certain situations where the injured person is eligible for workers' compensation benefits as a result of the injury; the term "unloading" does not encompass the activities of a driver of a tractor-trailer rig, in detaching the trailer from the tractor, which do not in any way aid in the unloading process (MCL 500.3106[2]; MSA 24.13106[2]).

2. INSURANCE — NO-FAULT INSURANCE — DOING MECHANICAL WORK — PARKED VEHICLES.

The term "doing mechanical work", as that term is used in the no-fault act's provision concerning parked vehicles which provides for the denial of benefits in certain situations where the injured person is eligible for workers' compensation benefits as a result of the injury, means that work normally done by a mechanic which is for the purpose of maintaining or repairing the vehicle (MCL 500.3106[2]; MSA 24.13106[2]).

*Marshall Lasser,* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *C. F. Boyle, Jr.,* and *Robert D. Brignall),* for Roadway Express, Inc.

*Judith A. Moskus,* for Citizens Insurance Company of America.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and W. J. CAPRATHE,* JJ.

PER CURIAM. Plaintiff, a truck driver for defendant Roadway Express, Inc., drove his tractor-trailer rig to defendant's terminal in Ann Arbor. Plaintiff began unhitching the trailer. When plaintiff unhooked the brake lines, the tractor rolled forward, striking plaintiff down and running over his left hand and chest. Plaintiff applied for and received workers' compensation benefits from

* Circuit judge, sitting on the Court of Appeals by assignment.

Roadway Express. Plaintiff then applied to Roadway for no-fault benefits. Roadway denied the claim and plaintiff brought this lawsuit. Plaintiff also joined Citizens Insurance Company of America, the no-fault carrier on plaintiff's privately-owned automobile. Both defendants filed motions for summary judgment. The trial court granted defendants' motions finding that plaintiff was barred from receiving no-fault benefits since he was in the unloading process when the injury occurred and he was performing mechanical work. Plaintiff appeals from this order as of right.

The question presented in this case is the interpretation of an amendment to the parked vehicle provision in the no-fault act, MCL 500.3106; MSA 24.13106. This provision states in part:

"(2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the workers' disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being section 418.101 to 418.941 of the Michigan Complied Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle."

Plaintiff argues that the trial court improperly found that he was unloading the vehicle when the accident occurred. We agree. In *Bell v F J Boutell Driveaway Co,* 141 Mich App 802, 805; 369 NW2d 231 (1985), this Court stated that "the terms loading and unloading in subsection (2) should be interpreted to encompass the activities at issue in these cases: activity that was preparatory to the actual lifting or lowering of goods". In *Bell,* there were two plaintiffs. One of the plaintiffs was in-

jured while he was removing chains which attached the vehicles he was delivering from his trailer. This action was clearly preparatory to the unloading of these vehicles. The other plaintiff was injured while pushing cargo to the rear of his trailer so that the dock workers could lift the cargo with a forklift. This again was clearly preparatory to the unloading of the trailer. In the instant case, however, plaintiff was merely detaching his tractor from the trailer so that he could continue with his work. There is no evidence whatsoever that detaching the trailer in any way aided the unloading process. Therefore, even giving unloading a broad definition, as found to be proper by this Court in *Bell, supra,* we are unable to find that plaintiff was unloading his trailer when the accident occurred.

We feel that our position is further supported by the legislative history of the current § 3106(2). The current statute was primarily enacted because of complaints in the trucking industry that dock workers, warehouse workers and mechanics were collecting no-fault benefits even though they never drove in their employer's vehicles. As stated in the House Legislative Analysis Section's first analysis of this statute, then House Bill 4524 (February 5, 1982):

"Employers argue that the no-fault act was not put into law to compensate persons injured while working in and around parked vehicles as part of their employment, either loading and unloading vehicles or doing mechanical repair work."

In the instant case, plaintiff was not acting as a dock worker or warehouse worker, but as a driver of the tractor-trailer rig. Plaintiff was not injured

while he was merely working around the vehicle, he was run over by the "parked" vehicle.[1]

The trial court also held that § 3106(2) also barred benefits because plaintiff was doing mechanical work on the vehicle. As noted by the legislative history, though, the trucking industry was primarily concerned with mechanics collecting no-fault benefits for injuries that occurred while they were doing repair work or maintenance work on the vehicles. In the instant case, it is undisputed that plaintiff was not performing mechanical repair or maintenance work. Defendants, however, now urge us to adopt a broad definition of "doing mechanical work" as that term is used in § 3106(2). While a broad definition of that term may be appropriate, we do not feel that it should include activity which is not designed to maintain or repair the truck and is routinely performed in the truck's operation. While detaching the trailer requires some level of skill, as the trial court noted, we do not feel that this function was "mechanical work" as that term is used in § 3106(2). We feel that "mechanical work" means that work normally done by a mechanic which is for the purpose of maintaining or repairing the vehicle. Plaintiff was removing the trailer from his tractor for increased mobility, not to maintain or repair it. Therefore, plaintiff was not performing mechanical work and the trial court erred in granting summary judgment on this basis.

The parties also raise an issue regarding the priority of the no-fault insurers. The trial court did not consider this issue since it felt that plaintiff was not entitled to no-fault benefits. While we

[1] The parties assume that the parked vehicle exception, § 3106, applies to this case. While we have doubts that injuries caused by a moving vehicle fall within § 3106, we assume so for the purposes of this appeal.

have determined that the trial court erred, we do not feel that it would be proper to reach the priority issue. We therefore reverse the trial court's order granting summary judgment in favor of defendants, and remand this case for further proceedings.

Reversed and remanded.