MacDONALD v MICHIGAN MUTUAL INSURANCE COMPANY

Docket No. 84355. Submitted February 19, 1986, at Detroit. Decided May 7, 1986.

Daniel MacDonald, a mechanic for a trucking company, injured his back while pulling on a lever to release a pin which would allow the trailer box of a tractor-trailer truck to be repositioned over the rear axle of the trailer in order to facilitate backing the vehicle up to a loading dock. MacDonald received workers' compensation benefits and then filed a complaint against Michigan Mutual Insurance Company, the no-fault insurer of the tractor-trailer truck, in Wayne Circuit Court seeking no-fault insurance benefits. Michigan Mutual filed a motion for summary judgment on the ground that plaintiff had failed to state a cause of action upon which relief could be granted because plaintiff was performing mechanical work when the injury occurred and was therefore barred from receiving no-fault benefits. The court, Joseph B. Sullivan, J., denied the motion. Plaintiff then filed a motion for summary judgment on the ground that there was no genuine issue as to any material fact and that he was entitled to judgment as a matter of law. Defendant countered by filing a similar motion. The court denied plaintiff's motion and granted defendant's motion, concluding that plaintiff was working as a motor vehicle mechanic and was performing a function within the scope of his employment duties at the time of the injury and was therefore not eligible for no-fault benefits. Plaintiff appealed.

The Court of Appeals *held:*

1. No-fault benefits are not available to an injured employee for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if workers' compensation benefits are available to him and he sustained the injury in the course of his employment while

REFERENCES

Am Jur 2d, Automobile Insurance §§ 2-4, 194-195, 205-212.

Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. Only movement of the wheels of the trailer, rather than movement of the box, is relevant in determining whether the trailer in this case was parked at the time the injury occurred. At the time of plaintiff's injury, the wheels of the trailer were locked by the brakes and did not move. The vehicle therefore was parked for purposes of the no-fault act.

2. Plaintiff was injured during the course of his employment while doing mechanical work on the trailer and received workers' compensation benefits for the injury. Thus, under the no-fault act, he is not eligible for no-fault benefits.

3. Even if it were to be concluded that plaintiff was not doing mechanical work at the time of his injury, he would not be entitled to no-fault benefits since the act provides for ineligibility where the injury occurred while the employee was loading or unloading the vehicle. At the time of his injury, plaintiff was engaged in an activity preparatory to the actual procedure of loading or unloading the trailer and is therefore not eligible for no-fault benefits.

4. Plaintiff's injury did not arise out of the use or operation of the truck tractor. The involvement of the tractor was merely incidental or fortuitous.

5. The trial court ruled correctly in denying plaintiff's motion for summary judgment and in granting defendant's motion for summary judgment.

Affirmed.

T. M. BURNS, J., dissented. He would hold that the trial court erred in finding that plaintiff, at the time of his injury, was performing mechanical work within the contemplation of the no-fault act. Furthermore, he would hold that plaintiff's action at the time of his injury was not part of the unloading process as that term is used in the no-fault act, but rather part of the delivery process. He would reverse.

### OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — TRACTOR-TRAILER TRUCKS — PARKED VEHICLES.

Only the movement of the wheels of a truck trailer, not the movement of the trailer box itself, is relevant in determining whether the vehicle is parked for purposes of the no-fault insurance act (MCL 500.3106[2]; MSA 24.13106[2]).

2. INSURANCE — NO-FAULT INSURANCE — MECHANICAL WORK.

A mechanic engaged in servicing a vehicle, whether he is engaged

in repairing a defect, performing preventive maintenance, or making an adjustment to alter operating characteristics, is performing mechanical work within the meaning of the no-fault insurance act (MCL 500.3106[2]; MSA 24.13106[2]).

3. INSURANCE — NO-FAULT INSURANCE — LOADING AND UNLOADING — PARKED VEHICLES — JUDICIAL CONSTRUCTION.

The terms "loading" and "unloading" a parked vehicle are to be interpreted broadly to include activities preparatory to the actual lifting onto or lowering of property from a parked vehicle for purposes of the no-fault act (MCL 500.3106[2]; MSA 24.13106[2]).

4. INSURANCE — NO-FAULT INSURANCE — PARKED VEHICLES — MOVING VEHICLES.

The parked vehicle exclusion of the no-fault act still applies where a moving vehicle is involved in an accident causing injury if the involvement of the moving vehicle is merely incidental or fortuitous (MCL 500.3106[2]; MSA 24.13106[2]).

DISSENT BY T. M. BURNS, J.

5. INSURANCE — NO-FAULT INSURANCE — DOING MECHANICAL WORK — PARKED VEHICLES.

The term "doing mechanical work," as that term is used in the no-fault act's provision concerning parked vehicles which provides for the denial of benefits in certain situations where the injured person is eligible for workers' compensation benefits as a result of the injury, means that work normally done by a mechanic which is for the purpose of maintaining or repairing the vehicle; it does not include activity which is routinely performed in the vehicle's operation (MCL 500.3106[2]; MSA 24.13106[2]).

6. INSURANCE — NO-FAULT INSURANCE — PARKED VEHICLE EXCEPTION.

Actions taken to facilitate the final backing of a tractor-trailer truck to an unloading dock are more properly considered part of the delivery process of the goods rather than the unloading process; injuries suffered while engaging in such actions should not preclude recovery of no-fault insurance benefits under the loading or unloading provision of the parked vehicle exception to the no-fault act (MCL 500.3106[2]; MSA 24.13106[2]).

*Marshall Lasser,* for plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *David J. Winter*), for defendant.

Before: J. H. Gillis, P.J., and T. M. Burns and
W. F. Hood,* JJ.

Per Curiam. Plaintiff appeals from an order of
the circuit court granting defendant's motion for
summary judgment pursuant to GCR 1963,
117.2(3).

Plaintiff injured his back on May 6, 1982, during
the course of his employment as a mechanic for a
trucking company and as a result received benefits
pursuant to the workers' compensation act. The
injury occurred when plaintiff pulled up on a lever
to release a pin holding a trailer box in place over
the trailer axle. The purpose of releasing the pin
was to permit the trailer box to slide over the axle
so that the position of the wheels relative to the
box could be changed; sliding the trailer box back
and forth would place the wheels closer to the
front or closer to the back of the trailer. After the
lever is pulled to release the pin, the trailer is
moved by being pulled forward or pushed back by
the tractor or cab. While the box is being moved in
this fashion, the wheels of the trailer are locked
and remain stationary throughout the process.

Plaintiff filed a complaint claiming entitlement
to benefits pursuant to the Michigan no-fault act,
MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.* On
November 4, 1983, defendant filed a motion for
summary judgment pursuant to GCR 1963,
117.2(1), claiming that plaintiff was performing
mechanical work when the injury occurred and
was therefore barred by MCL 500.3106(2); MSA
24.13106(2) from recovering no-fault benefits. The
trial court denied the motion.

Subsequently, plaintiff filed a motion for sum-
mary judgment under GCR 1963, 117.2(3), and
defendant responded with its own motion under

---

* Circuit judge, sitting on the Court of Appeals by assignment.

that subrule. On March 15, 1985, the lower court denied plaintiff's motion and granted defendant's cross-motion, concluding the plaintiff was working as a motor vehicle mechanic and was performing a function within the scope of his employment duties at the time of the injury. It would appear, then, that the trial court found that plaintiff was in fact performing mechanical work at the time of his injury, contrary to its ruling on defendant's earlier motion for summary judgment under rule 117.2(1).

Pursuant to MCL 500.3105; MSA 24.13105, no-fault benefits are available for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," subject to the provisions of the no-fault act. As mentioned above, one of those provisions, MCL 500.3106(2); MSA 24.13106(2), was relied upon by the trial court in finding plaintiff ineligible for benefits. Section 3106(2) provides as follows:

Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle.

In finding plaintiff ineligible for no-fault benefits under the above provision, the trial court obviously concluded that the vehicle in question, i.e., the trailer, was parked at the time of the injury. Plaintiff now argues that § 3106 is inapplicable because the vehicle was not in fact parked since

the tractor was moving back and forth slightly in order to reposition the trailer box in relation to the wheels. However, plaintiff never raised this issue before the trial court, apparently conceding the trailer's status as a parked vehicle. Defendant argues that plaintiff has waived his right to raise the issue on appeal, while plaintiff contends that this general rule is not applicable since consideration of the claim is necessary to a proper resolution of the case and the question is one of law which may be decided without reference to material issues of fact in dispute. *Harris v Pennsylvania Erection & Construction,* 143 Mich App 790, 795; 372 NW2d 663 (1985). Although we do not condone plaintiff's failure to raise this issue before the trial court, we agree that the parties do not materially dispute the facts surrounding the incident, and since it is necessary to a proper resolution of the case, we will consider the issue.

Although not an easy question to answer in light of the unique factual situation presented, we believe that, in determining whether the vehicle was in fact parked, the focus should be on the wheels, rather than the trailer box. Under the no-fault act, a motor vehicle is defined as a vehicle, including a trailer, designed for operation on a public highway by power other than muscular power. MCL 500.3101(2)(c); MSA 24.13101(2)(c). Since it is the wheels of the trailer, rather than the box, which enable its operation on a highway, we conclude that only the movement of the former is relevant in determining whether the vehicle was parked. Here, defendant was injured when he pulled a lever which would allow movement of the trailer box over the axles. At the time of the injury, the wheels of the trailer were locked by the brakes and thus did not move during the procedure which led to the plaintiff's injury. Therefore,

we conclude that the vehicle was parked, as that term is used in § 3106 of the no-fault act.

The next question presented, then, is whether the trial court erred in finding that the injury, which indisputably arose in the course of plaintiff's employment and for which workers' compensation benefits were available, occurred while plaintiff was "doing mechanical work on a vehicle . . . ." MCL 500.3106(2); MSA 24.13106(2). We believe so. Plaintiff was a mechanic employed to service vehicles on his employer's premises. He was injured while working on a vehicle which was completely stationary. Neither his occupation nor his injury were related to the hazards of moving vehicles. Thus, he fits squarely within the group to which the Legislature, by adoption of § 3106(2), evidenced an intent to deny no-fault benefits.

It could be argued that since plaintiff was not repairing a defect but was only shifting the trailer's axle from one normal position to another to alter its operating characteristics, plaintiff was not doing mechanical work. However, if plaintiff's purpose had been to restore the axle to a position from which it had been moved by accident or mistake, plaintiff would more clearly be deemed to have been repairing a defect and doing mechanical work. We believe that to distinguish on this basis would be both pointless and irrelevant to the language and purpose of § 3106(2). Therefore, we conclude that a mechanic engaged in servicing a vehicle, whether he is engaged in repairing a defect, performing preventive maintenance or making an adjustment to alter operating characteristics, is performing mechanical work within the meaning of § 3106(2).

Furthermore, even if one were to conclude that plaintiff was not doing mechanical work, he would not be entitled to no-fault benefits since § 3106(2)

also provides for ineligibility where the injury occurred while the employee was loading or unloading the vehicle. In *Bell v F J Boutell Driveaway Co,* 141 Mich App 802; 369 NW2d 231 (1985), this Court had an opportunity to consider this aspect of § 3106(2) and concluded that the terms should be broadly construed to encompass the complete operation of loading and unloading, including "activities preparatory to the actual lifting onto or lowering of property." 141 Mich App 809.

Applying this broad definition of the terms "loading" and "unloading," it is clear that plaintiff is not entitled to no-fault benefits. Plaintiff admitted in his deposition that his purpose in pulling the lever which releases a pin holding the trailer axle in place was so that the trailer could be backed into the loading dock more easily. The purpose for backing into the dock was to either load or unload the trailer. Therefore, at the time of his injury, plaintiff was engaged in an activity preparatory to the actual procedure of loading or unloading goods from the trailer. Pursuant to *Bell, supra,* this brings plaintiff's injury within the contemplation of § 3106(2).

As his final argument, plaintiff makes the conclusory statement that, even assuming § 3106(2) is otherwise applicable to bar his claim, he is nonetheless entitled to benefits as a result of the last portion of that section, which excludes from its effect injuries which "arose from the use or operation of another vehicle." Plaintiff contends that his injury arose out of the operation of the tractor, thus bringing this portion of the statute into application.

We disagree. In *Kalin v Detroit Automobile Inter-Ins Exchange,* 112 Mich App 497; 316 NW2d 467 (1982), this Court stated that where the "involvement of the moving vehicle is merely inciden-

tal or fortuitous," the parked vehicle exclusion
still applies. 112 Mich App 501. Here, plaintiff's
back "popped out" when he pulled a lever on the
trailer. Any movement of the tractor played abso-
lutely no part in causing this injury, and thus
whatever involvement one might wish to ascribe to
it would have to be characterized as incidental or
fortuitous. Therefore, plaintiff's position is untena-
ble.

We conclude that the trial court ruled correctly
in denying plaintiff's motion for summary judg-
ment and in granting the cross-motion of the
defendant.

Affirmed.

T. M. Burns, J. *(dissenting)*. Because I disagree
with the majority's conclusion in regard to inter-
pretation and application of the phrase "doing
mechanical work" and of the terms "loading" and
"unloading," I dissent. I believe that the trial
court erred by granting summary judgment in
favor of defendant.

First, this Court recently considered the mean-
ing of "mechanical work" as the term is used in
§ 3106(2) and concluded that the phrase refers to
"work normally done by a mechanic which is for
the purpose of maintaining or repairing the vehi-
cle." *Marshall v Roadway Express, Inc,* 146 Mich
App 753; 381 NW2d 422 (1985). In *Marshall,* this
Court stated:

> As noted by the legislative history, though, the
> trucking industry was primarily concerned with
> mechanics collecting no-fault benefits for injuries
> that occurred while they were doing repair work
> or maintenance work on the vehicles. In the in-
> stant case, it is undisputed that plaintiff was not
> performing mechanical repair or maintenance
> work. Defendants, however, now urge us to adopt a

broad definition of "doing mechanical work" as that term is used in § 3106(2). While a broad definition of that term may be appropriate, we do not feel that it should include activity which is not designed to maintain or repair the truck and is routinely performed in the truck's operation. While detaching the trailer requires some level of skill, as the trial court noted, we do not feel that this function was "mechanical work" as that term is used in § 3106(2). We feel that "mechanical work" means that work normally done by a mechanic which is for the purpose of maintaining or repairing the vehicle. Plaintiff was removing the trailer from his tractor for increased mobility, not to maintain or repair it. Therefore, plaintiff was not performing mechanical work and the trial court erred in granting summary judgment on this basis. [146 Mich App 757.]

Likewise in this case, it is undisputed that plaintiff was not performing mechanical repair or maintenance work. Plaintiff's injury occurred when he pulled on a lever to release a pin holding a trailer box in place over the trailer axle. This activity was not designed to maintain or repair the truck and is routinely performed in the truck's operation. After the lever is pulled to release the pin, the trailer is moved by being pulled forward or pushed backward by the tractor or cab. I find *Marshall, supra,* to be controlling on this question. Plaintiff was not performing mechanical work when the injury occurred since his purpose in pulling the lever was to allow the trailer box to be repositioned over the axle so that the trailer could be backed into a loading area more easily. The plaintiff was not engaged in work normally performed by a mechanic for the purpose of repairing the vehicle. Thus, I conclude that the trial court erred in denying no-fault benefits on the ground that plaintiff was doing "mechanical work" within the contemplation of § 3106(2).

Second, I do not dispute the appropriateness of
applying a broad interpretation to the terms "load-
ing" and "unloading." See e.g., *Marshall, supra,*
and *Dowling v Auto Club Casualty Ins Co,* 147
Mich App 482; 383 NW2d 233 (1985). However, I
do dispute that a liberal construction of those
terms leads to the conclusion that the § 3106(2)
exclusion applies.

As noted earlier, plaintiff's injury occurred when
he pulled on a lever to release a pin holding a
trailer box in place over the trailer axle. After the
lever is pulled to release the pin, the trailer is
moved by being pulled forward or pushed back-
ward by the tractor. In my opinion, plaintiff's
action was not part of the unloading process as
that term is used in § 3106(2). Plaintiff was en-
gaged in action which was preparatory to the
completion of the truck's arrival at the unloading
dock. The driver had not yet finished completely
backing the tractor-trailer assembly to its final
position at the dock. While the assembly was
parked at the time, after plaintiff pulled the lever
the main portion still needed to be moved closer.
This movement would involve the use of the trac-
tor. This case is more analogous to situations in
which a tractor-trailer driver has not finished
backing up to the dock than it is to situations
where all the driving is finished and the unloading
simply needs to be done.

I acknowledge that plaintiff's actions took place
prior to the actual unloading. However, almost
any action which takes place after the goods are
initially loaded and the truck has left the point of
origin is done in contemplation that the goods will
be unloaded after the destination is reached. In
that sense, even driving on the highway can be
considered an activity which is preparatory to the
actual procedure of unloading goods from the

trailer. While a liberal interpretation of the term "unloading" contemplates some actions which are preparatory to actual unloading, this does not mean that no line can be drawn to mark a point where "unloading" has not yet begun.

I believe that plaintiff's action in this case is more properly considered as a part of the delivery process than as a part of the unloading process. There would be no dispute as to "loading" and "unloading" in this case if plaintiff were injured in a situation where the driver simply stopped his truck a few feet from the dock, took a further look, and then finished backing the truck the extra few feet.

In this case, the driver had not yet properly positioned his tractor and trailer at the unloading dock when plaintiff was injured. In my opinion, the delivery was still taking place and no one was yet preparing to unload the goods from the vehicle. Plaintiff's purpose in pulling the lever was to release a pin so that the trailer could be backed into the loading dock more easily. Thus, he was aiding in the process of delivery.

I would reverse.