CRAWFORD v ALLSTATE INSURANCE COMPANY

Docket No. 91722. Submitted November 18, 1986, at Detroit. Decided March 11, 1987.

William Crawford brought an action in the Wayne Circuit Court against Allstate Insurance Company, claiming that defendant wrongfully denied his claim for no-fault insurance benefits. Plaintiff was injured in the course of his employment as a tractor-trailer driver for C & J Commercial Driveaway, Inc., when he fell from a trailer after a chain securing an automobile loaded on the trailer broke while plaintiff was retightening it. Plaintiff received workers' compensation benefits for his injury. The trial court, Charles S. Farmer, J., granted summary disposition in favor of defendant. Plaintiff appealed.

The Court of Appeals *held:*

No-fault benefits are payable for certain accidental bodily injuries related to the use or operation of motor vehicles. However, the no-fault act provides that accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if workers' compensation benefits are available to an employee who sustains the injury in the course of his employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. In the case of loading automobiles, the loading process necessarily includes the requirements of securing the automobiles into place.

Affirmed.

INSURANCE — NO-FAULT — LOADING AND UNLOADING — PARKED VEHICLES.

The terms "loading" and "unloading" a parked vehicle are to be interpreted broadly to include the complete operation of loading and unloading for purposes of subsection 3106(2) of the no-

REFERENCES

Am Jur 2d, Automobile Insurance §§ 205 *et seq.*; 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.

fault act which denies benefits in certain situations where the injured employee is eligible for workers' compensation benefits as a result of the injury; the complete operation of loading automobiles for transport aboard a trailer therefore encompasses the process of tightening chains securing the automobiles onto the trailer (MCL 500.3106[2]; MSA 24.13106[2]).

*Marshall Lasser,* for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Judith A. Moskus* and *Robert D. Goldstein*), for defendant.

Before: SHEPHERD, P.J., and WAHLS and SULLIVAN, JJ.

PER CURIAM. Plaintiff appeals the April 2, 1986, order of summary disposition entered in favor of defendant. The trial court denied plaintiff no-fault benefits, finding that the accident occurred while plaintiff was loading his vehicle in the course of his employment. We affirm.

On October 7, 1983, plaintiff was employed as a driver by C & J Commercial Driveaway, Inc. On that day, plaintiff was driving a tractor-trailer combination, the trailer consisting of two tiers, each carrying four automobiles. Plaintiff loaded the trailer at the C & J loading dock and secured the automobiles to the trailer with chains so that they would not move around during transport. Plaintiff then drove a short distance, but before actually leaving his employer's grounds, he parked the truck and went to C & J's office to get some coffee. Plaintiff removed his coveralls and cleaned up. When plaintiff came back out to the truck, he noticed that the chain securing the number three automobile on the top tier was loose. The record is not clear as to why it was loose. Plaintiff retrieved a tie-down bar from the truck to tighten the loose chain. This tie-down bar operated the tightening

ratchet affixed to the chain. Plaintiff climbed on the trailer, placed the tie-down bar in the ratchet, and began tightening the chain. As plaintiff pulled on the bar, the chain broke. Plaintiff lost his balance and fell to the ground, injuring himself.

Plaintiff received workers' compensation benefits from October 7, 1983, to February 26, 1986. Defendant, however, denied plaintiff's request for no-fault benefits. On September 27, 1984, plaintiff filed the instant action claiming that defendant wrongfully denied his claim for benefits.

Following plaintiff's deposition, defendant moved for summary disposition pursuant to MCR 2.116(C)(10) on October 30, 1985, arguing that plaintiff's injury occurred during the process of loading or doing mechanical work on his vehicle, and therefore was excluded from no-fault coverage under MCL 500.3106(2); MSA 24.13106(2). The trial court denied the motion in a written opinion dated February 6, 1986. The court concluded that the actual work of loading had been completed by the time of the injury and that plaintiff was actually in the process of transporting the freight, so the exclusion did not apply. The periodic adjustment of chains during the trip was a safety duty imposed on plaintiff by various motor carrier rules. The court also found that plaintiff's actions did not constitute "doing mechanical work on a vehicle." An order denying defendant's motion was entered on February 20, 1986.

On February 24, 1986, defendant moved for reconsideration of its summary disposition motion in light of recent case law. On April 2, 1986, the trial court entered an order granting defendant's motion for summary disposition, finding the instant case sufficiently similar to *Gray v Liberty Mutual Ins Co,* 149 Mich App 446; 386 NW2d 210

(1986), a case involving the loading/unloading exclusion, as to require a denial of benefits.

The sole question on appeal is whether plaintiff was in the process of loading his truck within the meaning of MCL 500.3106; MSA 24.13106 (§ 3106) when he climbed onto the trailer to tighten the loose chain.[1] No-fault benefits are payable for certain accidental bodily injuries related to the use or operation of motor vehicles. MCL 500.3105; MSA 24.13105. Some exclusions are provided for by § 3106, as amended by 1981 PA 209:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
>
> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
>
> (b) Except as provided in subsection (2), the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.
>
> (c) *Except as provided in subsection (2) for an injury sustained in the course of employment while loading,* unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.
>
> (2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle *if benefits under the worker's disability compensation act of 1969,* Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, *are available to an em-*

---

[1] Neither party has discussed on appeal whether plaintiff was doing mechanical work on his tractor-trailer, and we assume that issue has been abandoned.

*ployee who sustains the injury in the course of his or her employment while loading,* unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. [Emphasis added.]

In *Bell v F J Boutell Driveaway Co,* 141 Mich App 802; 369 NW2d 231 (1985), this Court considered two consolidated cases. The first involved a plaintiff who was injured when he began to lower a portion of his tractor-trailer in preparation for unloading cars he was delivering to a dealership. The plaintiff slipped on hydraulic fluid leaking from the trailer while he was walking from one car to another, removing the chains that secured them. The second plaintiff was injured when he pushed some freight from the middle of a tractor-trailer to the rear to position it for a dockworker's forklift.

The Court noted that, prior to amendment of § 3106 by 1981 PA 209, both plaintiffs would have been entitled to no-fault benefits. In denying benefits to both plaintiffs, this Court concluded that the Legislature intended a broad interpretation of the terms "loading" and "unloading" in § 3106(2) to include the "complete operation of loading and unloading." 141 Mich App 808-809. The Court concluded "that the Legislature intended to eliminate duplication of benefits for work-related injuries except when the actual driving or operation of a motor vehicle is involved." 141 Mich App 810. This broad interpretation of the statute was reaffirmed in *Gray v Liberty Mutual Ins Co, supra,* pp 449-451.

In *Gibbs v United Parcel Service,* 155 Mich App 300; 400 NW2d 313 (1986), the plaintiff had finished stacking packages inside a trailer and was moving toward the back of it so she could exit

when she tripped on a loose package and fell. The Court held that the "complete operation of loading" encompasses walking toward the exit of the trailer once the property is aboard. Just as the activities in *Bell* preparatory to unloading were broadly excluded from no-fault coverage, the Court believed that activities immediately after the last box was stacked should receive the same broad consideration.

We believe that the instant plaintiff's accident occurred during the loading process. Had the accident occurred when plaintiff first tightened the chain on the automobile at the loading dock, it would clearly have been part of the loading process. As the cases cited above indicate, however, loading involves more than just putting freight onto a carrier. It encompasses a variety of processes. In the case of loading automobiles, the loading process necessarily includes the requirements of securing the automobiles into place. From the record, it is apparent that the loading process was ongoing when plaintiff, a short time later and still on his employer's premises, sought to complete the process by securing one of the chains before starting his journey. As plaintiff was injured during the process of loading in the course of his employment, § 3106 excludes no-fault coverage.

Plaintiff directs this Court's attention to the decision in *Marshall v Roadway Express, Inc,* 146 Mich App 753; 381 NW2d 422 (1985), as an example of a case in which a driver who was injured when a trailer rolled forward after the driver detached it from the tractor was still permitted to recover no-fault benefits. The instant plaintiff notes that the driver in *Marshall* was still on his employer's premises. We find *Marshall* distinguishable, however. The driver had apparently detached

the trailer, which was to be unloaded by dock workers, so that he could continue his work elsewhere, presumably using the tractor. The Court found "no evidence whatsoever that detaching the trailer in any way aided the unloading process." 146 Mich App 756. In the instant case, plaintiff was completing an essential part of the loading process.

As a tractor-trailer drives down the highway, its freight may shift. It is entirely possible that securing devices such as the chains involved in this case could become loose and require tightening during the trip. Plaintiff testified that he generally had to retighten the chains during a trip and always checked to see if they were loose. In fact, it appears that state regulations require a driver to check the securing devices shortly after beginning a trip and periodically during it. We do not decide whether tightening the chains in transit would still constitute loading, as such a determination is unnecessary to our decision. In the instant case, only a short time had elapsed since the initial tightening. Plaintiff had not yet begun his trip and was still on his employer's premises. Plaintiff's actions constituted loading under the rules set forth in *Bell, Gray,* and *Gibbs.*

Affirmed.