COBB v LIBERTY MUTUAL INSURANCE COMPANY

Docket No. 94012. Submitted May 6, 1987, at Detroit. Decided July 31, 1987.

Ferris Cobb brought an action in the Wayne Circuit Court against Liberty Mutual Insurance Company seeking no-fault insurance benefits for injuries sustained when the plaintiff fell when decoupling his tractor from a trailer after delivering the trailer to his employer. The trailer was not to be unloaded on the day that the accident occurred. Defendant was voluntarily paying plaintiff compensation benefits due to the injury when plaintiff brought his action. Both parties brought motions for summary disposition and the trial court, John H. Hausner, J., granted plaintiff's motion and denied defendant's motion, finding that plaintiff's claim was not barred by MCL 500.3106(2); MSA 24.13106(2). Defendant appealed.

The Court of Appeals *held*:

1. Plaintiff's activities in this case are more properly considered as a part of the delivery process than as part of the unloading process.

2. The legislatively expressed intent in regard to § 3106(2) is entirely different when it relates to the actual operator of a motor vehicle, as is found in this case, rather than to dock workers, warehouse workers, and mechanics.

3. Plaintiff was not engaged in repairing a defect, performing preventative maintenance or making an adjustment to alter operating characteristics. The trial judge correctly ruled that the plaintiff was not doing mechanical work when injured. The finding in *Marshall v Roadway Express, Inc,* 146 Mich App 753 (1985), controls this case.

Affirmed.

HOOD, J., concurred except that he does not agree with the majority that the Legislature's expressed intent in regard to § 3106(2) is necessarily entirely different when it relates to the

REFERENCES

Am Jur 2d, Automobile Insurance §§ 130, 205-216.

Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.

actual operator of a motor vehicle, rather than to dock workers, warehouse workers, and mechanics.

1. INSURANCE — NO-FAULT — PARKED VEHICLE EXCEPTION — LOADING AND UNLOADING.

A truck driver's actions taken to facilitate the decoupling of a tractor-trailer so that the trailer can be unloaded at a future time are more properly considered part of the delivery process of the goods rather than the unloading process; recovery of no-fault insurance benefits should not be precluded under the loading or unloading provision of the parked vehicle exception of the no-fault act where injuries are suffered while engaging in such actions (MCL 500.3106[2]; MSA 24.13106[2]).

2. INSURANCE — NO-FAULT — PARKED VEHICLE EXCEPTION — LOADING AND UNLOADING.

The legislatively expressed intent in regard to the loading or unloading provision of the parked vehicle exception of the no-fault act is entirely different when it relates to the actual operator of a motor vehicle rather than to dock workers, warehouse workers, and mechanics (MCL 500.3106[2]; MSA 24.13106[2]).

3. INSURANCE — NO-FAULT — PARKED VEHICLE EXCEPTION — MECHANICAL WORK PROVISION.

A plaintiff may be determined not to have been doing mechanical work as that term is used in the mechanical work provision of the parked vehicle exception of the no-fault act where the plaintiff was not engaged in repairing a defect, performing preventative maintenance or making an adjustment to alter operating characteristics when the plaintiff's injury occurred (MCL 500.3106[2]; MSA 24.13106[2]).

*Marshall Lasser,* for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin* and *Robert D. Goldstein*), for defendant.

Before: BEASLEY, P.J., and HOOD and E. E. BORRADAILE,* JJ.

PER CURIAM. This case is part of the continuing

* Circuit judge, sitting on the Court of Appeals by assignment.

saga of interpretation of MCL 500.3106(2); MSA 24.13106(2), with a seeming conflict between *Marshall v Roadway Express, Inc,* 146 Mich App 753; 381 NW2d 422 (1985), and *MacDonald v Michigan Mutual Ins Co,* 155 Mich App 650; 400 NW2d 305 (1986), lv den 426 Mich 852 (1986).

Plaintiff in this case was an intercity truck driver for United Parcel Service who was injured on May 7, 1983, when he had made a run from Ohio to the UPS center in Livonia. Plaintiff's statement and deposition indicated that he arrived at the center on a Saturday when no unloading would take place. Plaintiff backed his truck up to a security door, flush with the door to prevent anyone from gaining entry to the trailer over the weekend. He indicated that he would not be unloading the trailer, but that someone from the Livonia center would do the unloading on Monday. After plaintiff had backed up the truck, he exited from the tractor, leaving the motor running and the door open. Plaintiff then pulled a lever that dropped the legs that would support the trailer when the tractor was pulled away. He released the trailer from the tractor, removed the air and electrical connections between the trailer and tractor, then attempted to dismount from the tractor by stepping on one of the fuel tanks, but slipped and fell, injuring his back. Plaintiff also claimed in his counterstatement of facts on appeal that it was his job to haul trailers from one city to another. Every day he would attach and decouple a trailer to or from the tractor, but plaintiff did not unload or load goods inside the trailer. Trailers that he dropped off would frequently be attached to another tractor and hauled to another city without being unloaded.

Defendant was voluntarily paying plaintiff compensation benefits due to the injury. Plaintiff com-

menced an action for first-party no-fault benefits against the defendant on November 1, 1984. In 1986, plaintiff filed a motion for summary disposition with defendant also filing a similar motion. Both motions, based upon MCR 2.116(C)(10), alleged that no genuine issue of material fact existed. The Wayne Circuit Court granted plaintiff's motion and denied defendant's motion. Defendant appeals as of right, claiming that plaintiff's suit is barred by MCL 500.3106(2); MSA 24.13106(2).

The statutory provision in effect at the time the incident occurred read as follows:

Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. [MCL 500.3106(2); MSA 24.13106(2).][1]

[1] In oral argument plaintiff's counsel noted that the Legislature has amended MCL 500.3106(2); MSA 24.13106(2) by 1986 PA 318, effective June 1, 1987, which now provides:

(2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the workers' disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, or under a similar law of another state or under a similar federal law, are available to an employee who sustains the injury in the course of his or her employment while doing either of the following:

(a) Loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from, or secured to, as cargo or freight, a motor vehicle.

The trial judge, in granting summary disposition to the plaintiff, apparently relied upon *Marshall, supra,* where this Court held that a plaintiff who decoupled his trailer and was run over by the tractor was not precluded from receiving no-fault benefits under § 3106(2). As noted in the *Marshall* case, under prior law, dock workers, warehouse workers and mechanics were able to collect no-fault benefits as well as workers' compensation benefits despite the fact that they never operated a motor vehicle. The Legislature sought to eliminate that duplication of benefits except where actual driving or operation of a motor vehicle is involved.

More recently, in the *MacDonald* case, decided in 1986, this Court held that § 3106(2) barred recovery of no-fault benefits when a plaintiff who was employed by a trucking company as a mechanic was injured during the process of placing a trailer axle in a different location on the trailer box. In dictum, the *MacDonald* Court dealt with the question of the loading or unloading language of § 3106(2) because plaintiff's deposition testimony indicated that he was in the process of moving the trailer axle so that the trailer could more easily be backed into the loading dock to either load or unload. Judge T. M. Burns, who had been on the *Marshall* panel, dissented in the *MacDonald* case, stating that "plaintiff's action in this case is more properly considered as a part of the delivery process than as a part of the unloading process." 155 Mich App 661. We agree with Judge Burns' dissent and affirm the trial court in this action.

(b) Entering into or alighting from the vehicle unless the injury was sustained while entering into or alighting from the vehicle immediately after the vehicle became disabled. This subdivision shall not apply if the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from or secured to, as cargo or freight, a motor vehicle.

Defendant relies on both *Gray v Liberty Mutual Ins Co,* 149 Mich App 446; 386 NW2d 210 (1986), lv den 425 Mich 885 (1986), where the plaintiff injured his back twice, first when he picked up packages in the back of his truck to be unloaded at his next stop and ten days later when he bent over to pick up a package to immediately unload it from his truck, and *Bell v F J Boutell Driveaway Co,* 141 Mich App 802; 369 NW2d 231 (1985), where the plaintiff who was delivering cars to a dealership removed a chain which secured a car to the trailer during transport and while walking around the trailer to release the chain on the other side fell and was injured.

We find that the instant case differs from both cases cited by defendant. In both of those cases a claimant in fact was involved in the process of loading or unloading, specifically dealing with the cargo or freight involved, while in the instant case plaintiff was not intending to deal in any way with the cargo or freight.

Defendant argues that the subjective intention of a particular claimant can create very difficult problems relative to evaluating each case; while we agree with that particular concern, it is necessary that the legislative intent be an important part of the consideration. In *Bell, supra,* this Court examined the legislative history of this subsection in depth, utilizing the House Legislative Analysis Section's report on the legislation to discover the intended purpose of the amendment. The primary problem stemmed from double recovery permitted by the prior § 3106 where dock workers, warehouse workers and mechanics were able to collect both workers' compensation benefits and no-fault benefits though they never operated a motor vehicle. We believe that the legislatively expressed

intent is entirely different when it relates to the actual operator of a motor vehicle, as is found in this case.

Defendant, while not raising the issue in the trial court, on appeal raises the question of the claimant's doing "mechanical work." The issue was not argued at the motion hearing but was included in plaintiff's written motion. This Court has determined that, like the words "loading or unloading," the phrase "doing mechanical work" must be liberally interpreted. *Dowling v Auto Club Casualty Ins Co,* 147 Mich App 482; 383 NW2d 233 (1985); *Marshall, supra.* In *Marshall,* this Court stated:

> While a broad definition of that term may be appropriate, we do not feel that it should include activity which is not designed to maintain or repair the truck and is routinely performed in the truck's operation. . . . We feel that "mechanical work" means that work normally done by a mechanic which is for the purpose of maintaining or repairing the vehicle. [*Marshall, supra,* p 757.]

Defense counsel also, in oral argument, referred to *Yates v Hawkeye-Security Ins Co,* 157 Mich App 711; 403 NW2d 208 (1987), arguing that this Court has adopted a broad definition of maintenance of a motor vehicle. *Yates* is easily distinguishable from the instant case. In *Yates* it is noted that the trial judge granted summary disposition based upon a finding that plaintiff's injuries did not arise out of the maintenance of a motor vehicle as a motor vehicle. Under MCL 500.3105(1); MSA 24.13105(1), a claimant is entitled to personal protection benefits "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." This Court disagreed with the trial court and held that be-

cause plaintiff was injured while preparing to tow an automobile, and towing constitutes maintenance of a motor vehicle, plaintiff was entitled to benefits under § 3105(1) of the no-fault act. Furthermore, we believe *Yates* is inapplicable because this Court in *Yates* specifically found that the parked vehicle exception did not apply, while in this case we find that there clearly is a parked vehicle.

Plaintiff in this case was not "engaged in repairing a defect, performing preventative maintenance or making an adjustment to alter operating characteristics . . . ." *MacDonald, supra,* p 656. We agree with the trial judge that the plaintiff was not doing mechanical work when injured and we are satisfied that the finding in *Marshall* controls in this case.

Affirmed.

HOOD, J. *(concurring)*. I concur with the result in this case and also with the reasoning of the majority opinion with one exception. I do not agree, as the majority indicates, that the Legislature's expressed intent is necessarily entirely different when it relates to the actual operator of a motor vehicle. In this case, however, plaintiff had no involvement whatsoever with the freight that he was hauling and, therefore, even under the broadest interpretation of the statute, was entitled to no-fault benefits.