THOMPSON v TNT OVERLAND EXPRESS

Docket No. 136558. Submitted March 3, 1993, at Detroit. Decided September 7, 1993, at 9:20 A.M. Leave to appeal sought.

Roger Thompson brought an action in the Wayne Circuit Court against TNT Overland Express, seeking no-fault automobile insurance benefits for injuries he sustained as a tractor-trailer driver for the defendant. On the day of his injury, the plaintiff drove a loaded tractor-trailer to a yard and detached the loaded trailer from the tractor. After attaching an unloaded trailer to the tractor, the plaintiff walked around the tractor-trailer to inspect it. He discovered a leak in an air hose connection between the tractor and the trailer. In an attempt to reconnect the air hose, he climbed up on the parked tractor but fell and injured himself before he could grab the air hose. The court, Samuel A. Turner, J., granted summary disposition for the plaintiff, rejecting the defendant's contention that no-fault benefits were not available to the plaintiff because he was entitled to workers' compensation benefits and injury was sustained while loading, unloading, or doing mechanical work on a parked vehicle. MCL 500.3106(2)(a); MSA 24.13106(2)(a). The defendant appealed.

The Court of Appeals *held:*

MCL 500.3106(2)(a); MSA 24.13106(2)(a) provides that accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the workers' compensation act are available for the injury and the injury is sustained while loading, unloading, or doing mechanical work on the parked vehicle, unless the injury arose from the use or operation of another vehicle.

In this case, in attempting to reconnect the air hose of the tractor-trailer, the plaintiff was not loading, unloading, or doing mechanical work on the parked vehicle, but merely was engaged in an activity that is routinely performed by a driver to make a tractor-trailer operational. The plaintiff's delivery of a loaded trailer and the subsequent attempt to connect an empty

REFERENCES

Am Jur 2d, Automobile Insurance §§ 281, 368.
See ALR Index under Mechanics; Workers' Compensation.

trailer to the tractor did not constitute loading or unloading because they cannot be construed as activities preparatory to the actual lifting or lowering of cargo or as acts incidental to the completion of the loading or unloading process.

Affirmed.

. GRIFFIN, J., dissenting, stated that the plaintiff was doing mechanical work on the tractor-trailer, so as to be disqualified from no-fault benefits, because he was altering the operational characteristics of the vehicle or correcting a specific operational defect, either of which can be construed as doing mechanical work on the vehicle.

INSURANCE — NO-FAULT — PARKED VEHICLES — WORKERS' COMPENSA-
        TION — MECHANICAL WORK.

The phrase "doing mechanical work," as used in the provision of the no-fault act that disallows no-fault benefits for injury if workers' compensation benefits are available and if injury is sustained while doing mechanical work on a parked vehicle, means engaging in an activity that is normally done by a mechanic for the purpose of maintaining or repairing the vehicle (MCL 500.3106[2][a]; MSA 24.13106[2][a]).

*Mark Granzotto* and *William N. Bradford,* for the plaintiff.

*Bodman, Longley & Dahling* (by *James W. Walsh* and *Megan Maher Brennan*), for the defendant.

Before: CAVANAGH, P.J., and GRIFFIN and JANSEN, JJ.

JANSEN, J. Defendant appeals as of right from the Wayne Circuit Court's December 17, 1990, judgment requiring it to pay plaintiff statutory no-fault benefits and interest in the amount of $26,652.61. The judgment is the result of the trial court's previous orders denying defendant's motion for summary disposition and granting plaintiff's cross-motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Defendant contends that plaintiff is not entitled

to no-fault benefits because he has been receiving workers' compensation benefits as a result of an injury that occurred while he was loading, unloading, or doing mechanical work on a vehicle. Defendant argues that pursuant to MCL 500.3106(2)(a); MSA 24.13106(2)(a), plaintiff's injuries do not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle. We disagree with defendant.

No-fault benefits are payable for certain accidental bodily injuries arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. MCL 500.3105; MSA 24.13105. However, the parked vehicle provision, MCL 500.3106; MSA 24.13106, provides for certain exclusions from no-fault coverage. At issue in the present case is MCL 500.3106(2)(a); MSA 24.13106(2)(a), which provides as follows:

> (2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, or under a similar law of another state or under a similar federal law, are available to an employee who sustains the injury in the course of his or her employment while doing either of the following:
>
> (a) Loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from, or secured to, as cargo or freight, a motor vehicle.

In *Bell v F J Boutell Driveaway Co,* 141 Mich App 802; 369 NW2d 231 (1985), this Court adopted a broad meaning of the terms "loading" and "un-

loading" as used in § 3106(2). *Id.,* p 809. "Those terms encompass activities preparatory to the actual lifting onto or lowering of property. The terms include the complete operation of loading and unloading." *Id.* See also *Raymond v Commercial Carriers, Inc,* 173 Mich App 290, 292-293; 433 NW2d 342 (1988); *Crawford v Allstate Ins Co,* 160 Mich App 182, 186; 407 NW2d 618 (1987); *Gibbs v United Parcel Service,* 155 Mich App 300, 302-303; 400 NW2d 313 (1986); *Gray v Liberty Mutual Ins Co,* 149 Mich App 446, 449-450; 386 NW2d 210 (1986). Applying a broad definition of the terms "load" and "unload," the *Gibbs* Court held that, like acts of preparation, acts incidental to the completion of the loading or unloading process fall within the scope of § 3106(2). *Id.,* p 305. In *Bell,* the Court concluded that the Legislature intended to eliminate duplication of benefits for work-related injuries except where the actual driving or operation of a motor vehicle is involved. *Id.,* p 810.

We cannot conclude, as defendant asserts, that plaintiff was in the process of loading or unloading his trailer at the time he was injured. Plaintiff, a truck driver, testified at deposition that he hooked up a loaded trailer in defendant's Detroit yard and was to transport the trailer to defendant's yard in Windsor, Canada. Defendant did not personally load the trailer. Plaintiff testified that the drivers "shuttle" the trailers to defendant's yard in Canada and drop them off so that a Canadian driver can pick up the trailer and deliver it to its destination in Canada.

On the day in question, plaintiff dropped off the loaded trailer at defendant's Canadian yard; he was then required to bring an empty trailer back to Detroit. After hooking the electrical cable and air hoses from the tractor to the empty trailer, plaintiff performed a "circle check" of the tractor-

trailer unit. As plaintiff got alongside the tractor, he heard an air leak. He got up on the tractor to check the leak and, as he reached for the air hose, he slipped and fell, sustaining bodily injuries.

We are of the opinion that the facts of the present case make it distinguishable from the cases relied upon by defendant. In *Bell,* the plaintiff, who was delivering cars to a dealership, removed a chain that secured a car to the trailer during transport and, while walking around the trailer to release the chain on the other side, fell on hydraulic fluid leaking from the trailer. *Id.,* p 805. In *Gray,* the plaintiff injured his back twice, first when he picked up packages in the back of his truck to be unloaded at his next stop, and again ten days later when he bent over to pick up a package that was to be immediately unloaded from his truck. *Id.,* p 448. In *Gibbs,* the plaintiff had just finished stacking packages inside a trailer and was moving toward the back of the trailer so that she could get out when she tripped on a loose package, fell to the trailer floor, and injured her knees. *Id.,* p 301. In *Crawford,* the plaintiff, employed as the driver of a tractor-trailer hauling automobiles, was injured on his employer's premises while attempting to tighten a loose chain used to secure an automobile to the top tier of the trailer. *Id.,* pp 183-184. And similarly, in *Raymond,* the driver of a tractor-trailer hauling new cars was injured while tightening loose chains that were securing the cars to the trailer. *Id.,* p 292.

In those cases, each claimant was in the process of loading, unloading, or specifically dealing with the cargo or freight involved, while in the present case, plaintiff was not dealing with the cargo or freight. See *Cobb v Liberty Mutual Ins Co,* 164 Mich App 66, 71; 416 NW2d 328 (1987) (the plaintiff, who was not responsible for loading or unload-

ing goods from inside the trailer, was injured when he slipped and fell while dismounting from the tractor after he released the trailer from the tractor and removed the air and electrical connections between the trailer and the tractor). Plaintiff did not load the trailer that was delivered to the yard in Canada, nor was he required to unload it. Additionally, plaintiff was to return to Detroit with an empty trailer.

Even giving a broad definition to the terms "loading" and "unloading," as found appropriate in *Bell* and its progeny, we are unable to conclude that plaintiff was injured while loading or unloading the trailers. See *Marshall v Roadway Express, Inc,* 146 Mich App 753, 756; 381 NW2d 422 (1985) (the plaintiff was unhitching his trailer and, as he unhooked the brake lines, the tractor rolled forward, striking him down and running over his left hand and chest). There is no evidence that plaintiff was aiding in the loading or unloading process. *Id.* Plaintiff's mere delivery of a previously loaded trailer and his subsequent attempt to connect an empty trailer to the tractor cannot be construed as "activities preparatory to the actual lifting onto or lowering of property," *Bell,* p 809, or "acts incidental to the completion of the loading or unloading process." *Gibbs,* p 305. We are unable to find that plaintiff was loading or unloading the trailers at the time he sustained his injuries.

Defendant contends, in the alternative, that plaintiff was performing mechanical work when he attempted to reconnect the leaking air hose "glad hand" and, therefore, is precluded from receiving no-fault benefits. Again, we disagree.

This Court has determined that, like the words "loading" and "unloading," the phrase "doing mechanical work" must be liberally interpreted. *Cobb,* p 72. In *Marshall,* p 757, this Court stated:

While a broad definition of that term may be appropriate, we do not feel that it should include activity which is not designed to maintain or repair the truck and is routinely performed in the truck's operation. While detaching the trailer requires some level of skill, as the trial court noted, we do not feel that this function was "mechanical work" as that term is used in § 3106(2). We feel that "mechanical work" means that work normally done by a mechanic which is for the purpose of maintaining or repairing the vehicle.

In the present case, while performing a circle check of the tractor-trailer unit, plaintiff heard an air leak. He climbed onto the tractor in order to check the air hoses. As he reached for the hose, he slipped and fell between the fender and the battery box, sustaining bodily injuries. Plaintiff never actually grasped the hoses.

According to the testimony of Terrence Abbott, the safety supervisor and driver trainer for defendant, the tractor-trailer unit cannot be operated if the air hoses are not connected. It is the responsibility of the driver to connect the hoses, and is part of the "[n]ormal routine in a driver's hook up." Abbott testified that it was not uncommon for an air leak to develop, and when it occurs, a driver usually does not call a mechanic to remedy the leak. According to Abbott, this is not mechanical work or repair work. Abbott stated that in his experience the drivers do not attempt to make mechanical repairs on their vehicles.

Daniel Garza, a dispatcher with defendant, testified that in order for the tractor-trailer to operate, the air hoses must be hooked up. The driver performs the hook up as part of his job; a mechanic never does. Garza testified that a hose may leak if it is not hooked up properly or if a seal is worn out and, if this occurs, the hose may be

rehooked. According to Garza, this is something that would not necessarily require the assistance of a mechanic. However, if a glad hand is broken, and the driver is not qualified to repair it, then it would be necessary to call a mechanic. In the present case, the glad hand was only leaking and was not broken.

James Armitage, a driver employed by defendant, stated that the glad hand hook up is necessary to operate the equipment because the trailer brakes will not release without air going back to them. Armitage testified that a leak could occur if the glad hand is not properly put together. If this occurs, the glad hand must be rehooked. According to Armitage, a mechanic is never called to hook up a glad hand or hose because it is not mechanical work.

In light of the above testimony, it is our opinion that plaintiff was not injured while performing mechanical work. Plaintiff's attempt at remedying the air leak by reconnecting the glad hand was not activity designed to maintain or repair the truck. *Cobb,* p 72; *Marshall,* p 757. Plaintiff did not engage in work that is normally done by a mechanic for the purpose of maintaining or repairing the vehicle; rather, it was an activity "routinely performed in the truck's operation." *Cobb,* p 72; *Marshall,* p 757. In fact, it was an activity absolutely necessary to the tractor-trailer's operation.

Plaintiff was injured while attempting to check a leaky air hose. Plaintiff was attempting to reconnect the hose, not repair or maintain the hose. Plaintiff was not "engaged in repairing a defect, performing preventive maintenance or making an adjustment to alter operating characteristics." Cf. *MacDonald v Michigan Mutual Ins Co,* 155 Mich App 650, 656; 400 NW2d 305 (1986). In fact, there was no apparent defect because, after having

fallen, plaintiff drove the tractor-trailer back to Detroit without incident. According to Armitage, he did not recall hearing a leak from plaintiff's truck after the fall, and he did not have to make any adjustments to the truck in order to make it operational.

We conclude that plaintiff was not doing mechanical work at the time he sustained his injuries. Notwithstanding a liberal interpretation of the phrase "doing mechanical work," we do not believe that plaintiff was engaged in activity designed to maintain or repair the vehicle. Additionally, reconnecting leaking air hoses is not work normally performed by a mechanic; rather, it is an activity routinely performed by the driver to make the tractor-trailer operational. We find no error requiring reversal on the record before us.

Affirmed.

CAVANAGH, P.J., concurred.

GRIFFIN, J. *(dissenting)*. I respectfully dissent. I would hold that plaintiff was "doing mechanical work" on the parked vehicle at the time of his fall. Accordingly, I would hold that plaintiff is barred by operation of MCL 500.3106(2); MSA 24.13106(2) from collecting no-fault benefits for his injuries.[1]

Section 3106(2) was intended to eliminate duplicative recovery for work-related injuries except where actual driving or operation of a motor vehicle is involved. *Stanley v State Automobile Mutual Ins Co,* 160 Mich App 434, 439; 408 NW2d 467 (1987); *Bell v F J Boutell Driveaway Co,* 141 Mich App 802, 809-811; 369 NW2d 231 (1985). Therefore, the phrase "doing mechanical work" has been interpreted broadly so as to give effect to this

---

[1] There is no dispute that plaintiff has workers' compensation benefits available for his injuries.

legislative intent. *Dowling v Auto Club Casualty Ins Co,* 147 Mich App 482, 485-486; 383 NW2d 233 (1985).

The statutory phrase "doing mechanical work on a vehicle" includes repairing defects, performing preventive maintenance, or making adjustments to alter operating characteristics. *MacDonald v Michigan Mutual Ins Co,* 155 Mich App 650, 656; 400 NW2d 305 (1986). The focus should not be on the employee's job title or classification but rather on the type of activity engaged in at the time of the injury. See, e.g., *Stanley, supra; Cobb v Liberty Mutual Ins Co,* 164 Mich App 66; 416 NW2d 328 (1987).

In the present case, plaintiff was injured while inspecting his vehicle to determine the source of an air leak. Plaintiff slipped and fell while reaching for the air hose that was improperly connected. As noted by the majority, a properly connected hose was "absolutely necessary" for the tractor-trailer's operation. Under these circumstances, I fail to see how plaintiff was not engaged in repairing a defect—conduct that qualifies as mechanical work under § 3106(2).

In reaching a contrary result, the majority concludes that plaintiff was merely engaged in an "activity routinely performed by the driver to make the tractor-trailer operational." *Ante* at 344. In this regard, I agree with the analysis set forth in *MacDonald, supra.* There, the plaintiff was injured while attempting to adjust the position of a trailer box on a tractor-trailer rig. In holding that such action constituted "doing mechanical work," we rejected as inconsistent with legislative intent any distinction between merely altering the operational characteristics of a vehicle and correcting specific operational defects:

It could be argued that since plaintiff was not repairing a defect but was only shifting the trailer's axle from one normal position to another to alter its operating characteristics, plaintiff was not doing mechanical work. However, *if plaintiff's purpose had been to restore the axle to a position from which it had been moved by accident or mistake, plaintiff would more clearly be deemed to have been repairing a defect and doing mechanical work. We believe that to distinguish on this basis would be both pointless and irrelevant to the language and purpose of § 3106(2).* Therefore, we conclude that a mechanic engaged in servicing a vehicle, whether he is engaged in repairing a defect, performing preventive maintenance or making an adjustment to alter operating characteristics, is performing mechanical work within the meaning of § 3106(2). [*MacDonald, supra* at 656. Emphasis added.]

In short, whatever the cause of the air leak, plaintiff was clearly "doing mechanical work" within the meaning of § 3106(2) when he attempted to correct it. Accordingly, I would remand for entry of judgment in favor of defendant on this basis.[2]

---

[2] I agree with the majority that plaintiff was not loading or unloading the vehicle when his injuries occurred.