BELL v F J BOUTELL DRIVEAWAY COMPANY
JONES v ANR FREIGHT SYSTEM

Docket Nos. 71697, 71834. Submitted October 10, 1984, at Detroit.—
Decided April 15, 1985.

William Bell hauled and delivered new cars as a truckdriver-
employee of F. J. Boutell Driveaway Company. Old Republic
Insurance Company was Boutell's no-fault insurer. While pre-
paring to move cars off the trailer, Bell was injured when he
fell on hydraulic fluid which had leaked from the trailer. He
received workers' compensation benefits for the time he was off
work. He applied for no-fault benefits from Old Republic, which
denied the claim. Bell brought an action against Boutell and
Old Republic for the benefits. The Wayne Circuit Court, Joseph
B. Sullivan, J., denied defendant's motion for summary judg-
ment because it found that a material question of fact existed
as to whether Bell was unloading the truck at the time of the
injury.

Carl Jones, a resident of Ohio, worked as a truckdriver for ANR
Freight System and Associated Truck Lines, Inc., and was
pushing or pulling some freight to the rear of the trailer to
position it for a forklift operator to lower it to the ground when
he was injured. The injury occurred in Ohio and he received
Ohio workers' compensation benefits. Associated Truck Lines is
a no-fault self-insurer. Jones brought an action against ANR
and Associated Truck Lines to recover no-fault benefits. The
Wayne Circuit Court, James A. Hathaway, J., first ordered
Jones to file a claim with the Workers' Compensation Bureau
but, on reconsideration, reversed and found that Jones was not
unloading the vehicle at the time of the injury.

Defendant appealed by leave granted and the appeals were
consolidated. *Held:*

1. The terms "loading" and "unloading" a parked vehicle are

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Automobile Insurance § 205 *et seq.*
Risks within "loading and unloading" clause of motor vehicle
liability insurance policy. 6 ALR4th 686.
[2] 73 Am Jur 2d, Statutes §§ 145, 146.
[3] 81 Am Jur 2d, Workmen's Compensation § 62.

to be interpreted broadly to include activities preparatory to the actual lifing onto or lowering of property from a parked vehicle for purposes of subsection 3106(2) of the no-fault act which denies benefits in certain situations where the injured person is eligible for workers' compensation as a result of the injury.

2. An injured employee must both be a resident of Michigan at the time of the injury and have concluded a contract for hire in Michigan for the Bureau of Workers' Disability Compensation to acquire jurisdiction over the employee's out-of-state injury. The trail court had jurisdiction to decide whether Jones was eligible for no-fault benefits.

Reversed and remanded.

1. INSURANCE — NO-FAULT INSURANCE — LOADING AND UNLOADING — PARKED VEHICLES — JUDICIAL CONSTRUCTION.

The terms "loading" and "unloading" a parked vehicle are to be interpreted broadly to include activities preparatory to the actual lifting onto or lowering of property from a parked vehicle for purposes of subsection 3106(2) of the no-fault act which denies benefits in certain situations where the injured person is eligible for workers' compensation as a result of the injury (MCL 500.3106[2]; MSA 24.13106[2]).

2. STATUTES — JUDICIAL CONSTRUCTION.

The fundamental goal of statutory construction is to identify and give effect to the intent of the Legislature; the language of the statute is the best source for ascertaining the Legislature's intent.

3. WORKERS' COMPENSATION — OUT-OF-STATE INJURIES.

An injured employee must both be a resident of Michigan at the time of the injury and have concluded a contract for hire in Michigan for the Bureau of Workers' Disability Compensation to acquire jurisdiction over the employee's out-of-state injury (MCL 418.845; MSA 17.237[845]).

*Marshall Lasser,* for plaintiffs.

*Dice, Sweeney, Sullivan, Feikens, Hurbis & Foster, P.C.* (by *Jack E. Vander Male),* for defendants ANR Freight System and Associated Truck Lines, Inc.

*James R. Stegman, P.C.* (by *James R. Stegman),*

for defendants F. J. Boutell Driveaway Company and Old Republic Insurance Company.

Before: Hood, P.J., and Beasley and P. J. Marutiak,* JJ.

Hood, P.J. Defendants appeal by leave granted in these consolidated no-fault insurance cases. Defendants F. J. Boutell Driveaway Co. and Old Republic Insurance Company appeal from a May 31, 1983, order denying their motion for summary judgment. ANR Freight Systems and Associated Truck Lines (ATL) appeal from a June 1, 1983, order granting plaintiff Carl Jones' motion for reconsideration.

The question presented in these cases is the interpretation of an amendment to the parked vehicle provision in the no-fault act, MCL 500.3106; MSA 24.13106. The amended provision states (the pertinent amendatory language is emphasized):

"(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

"(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

"(b) *Except as provided in subsection (2),* the injury was a direct result of physical contact with *the* equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) *Except as provided in subsection (2) for an injury sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle,* the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"(2) *Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Complied Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle.*"

Defendants argue that the terms loading and unloading in subsection (2) should be interpreted broadly to include activity that is preparatory to the actual lifting or lowering of goods. Plaintiffs argue that the terms loading and unloading in subsection (2) should be interpreted narrowly to exclude activity preparatory to the actual lifting or lowering of goods.

We conclude that the terms loading and unloading in subsection (2) should be interpreted to encompass the activities at issue in these cases: activity that was preparatory to the actual lifting or lowering of goods.

I

Plaintiff Bell hauled and delivered new cars as a truckdriver-employee of F. J. Boutell. Old Republic insured Boutell for Michigan no-fault benefits.

On June 23, 1982, Bell drove a load of cars to a car dealership. He began to lower a portion of his tractor-trailer in preparation for unloading the cars he was delivering. Bell removed chains securing a car to the trailer and was walking on the trailer to another location to remove the chains on the other axle of the car when he slipped and fell on hydraulic fluid leaking from the trailer.

Bell was injured from his fall and received workers' compensation benefits for the period of time he was disabled from the injury. On October 6, 1982, Bell requested no-fault benefits. Old Republic denied him those benefits, stating that subsection 3106(2) precluded them. Old Republic asserted that Bell was injured while performing activities for which he received Michigan workers' compensation benefits within the meaning of that section.

Bell filed his action for no-fault benefits on March 16, 1983. Defendants moved for summary judgment, again relying on subsection 3106(2). The trial court denied the motion because it found that a material question of fact remained regarding whether Bell was unloading within the meaning of subsection (2) when he suffered his injury.

Plaintiff Jones worked as a truckdriver for ANR Freight and ATL. On March 2, 1982, he drove a truck to a location in Ohio to make a delivery. Jones injured himself when he pushed or pulled some freight from the middle of the tractor-trailer to the rear in order to position it for a dockworker to lower the freight with a fork-lift. Jones, a resident of Ohio, received Ohio workers' compensation benefits while he was disabled from the injury. ATL, the owner of the tractor-trailer, was a self-insurer providing Michign no-fault coverage.

After ATL's no-fault insurer denied benefits to Jones, he filed this action for Michigan no-fault benefits. ATL answered that Jones was not entitled to those benefits because subsection 3106(2) prohibited them. On December 14, 1982, ATL moved for an order to compel Jones to file a claim for Michigan workers' compensation benefits so that the Michigan Workers' Compensation Bureau could determine whether Jones' claim was compensable in Michigan. The trial court granted the

motion and entered an order on April 4, 1983, requiring Jones to file a Michigan workers' compensation claim. On April 28, 1983, Jones moved for reconsideration, arguing that, whether or not he could receive Michigan workers' compensation benefits, he was entitled to no-fault benefits because he was not "unloading" within the meaning of subsection 3106(2) when he was injured. The trial court agreed.

## II

Prior to January 1, 1982, § 3106 stated, in pertinent part:

"Accidental bodily injury does not arise out of the ownership, operation, maintenance or use of a parked vehicle as a motor vehicle unless any of the following occur:

\* \* \*

"(b) The injury was a direct result of physical contact with \* \* \* property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) The injury was sustained by a person while occupying, entering into or alighting from the vehicle."

Had the above statute been in effect at the time of plaintiffs' injuries they would have been entitled to no-fault benefits pursuant to subsection (c). Plaintiffs attempted to avoid what appears to be the consequences of the new subsection (2), see *Bauman v Auto-Owners Ins Co,* 133 Mich App 101, 103, fn 1; 348 NW2d 49 (1984), by asking this Court to interpret "loading" or "unloading" in that subsection to mean that part of the unloading process during which claimants are in physical contact with property being lifted onto or lowered from the insured vehicle. We decline to so limit

the terms "loading" and "unloading" in subsection 3106(2).

In *Dembinski v Aetna Casualty & Surety Co,* 76 Mich App 181; 256 NW2d 69 (1977), this Court recognized that the terms "loading" and "unloading" in motor vehicle insurance contracts have been broadly construed to encompass the period during which an object was removed from its place of rest and was carried to and placed in a vehicle. *Id.,* p 183, citing *Allstate Ins Co v Valdez,* 190 F Supp 893 (ED Mich, 1961). However, the contract language at issue in *Dembinski* was similar to that found in subsection 3106(1)(b) of the no-fault act. *Dembinski* found that language to limit loading and unloading to actual physical contact with property. In cases interpreting former subsection 3106(1)(b), panels of this Court have relied upon *Dembinski* for interpretation of that statutory proviso. See *Block v Citizens Ins Co of America,* 111 Mich App 106, 109; 314 NW2d 536 (1981), and *Royston v State Farm Mutual Automobile Ins Co,* 130 Mich App 602; 344 NW2d 14 (1983), *lv den* 419 Mich 867 (1984). Because *Dembinski, Block,* and *Royston* address language that is found in subsection 3106(1)(b), "property being lifted onto or lowered in the loading or unloading process", those cases do not address interpretation of the general terms "loading" and "unloading" unembellished by the limiting language found in subsection (1)(b). Therefore, despite plaintiff's argument contrariwise, those cases are not dispositive.

Nevertheless, as the Court in *Dembinski* recognized, the general terms "loading" and "unloading" as they appear in insurance contracts have been interpreted by federal courts as meaning the complete operation of loading or unloading, or the entire process of loading and unloading. This broad interpretation encompasses activities pre-

paratory to the actual loading or unloading or delivery. See *Valdez, supra; Selective Ins Co v Hartford Accident & Indemnity Co,* 213 F Supp 3 (ED Mich, 1963); *St Paul Mercury Ins Co v Huitt,* 215 F Supp 709 (WD Mich, 1963), *aff'd* 336 F2d 37 (CA 6, 1964), and *Ford Motor Co v Ins Co of North America,* 494 F Supp 846 (ED Mich, 1980). Although the reasoning for interpreting the terms "loading" or "unloading" in an insurance contract does not apply to the interpretation of those terms in subsection 3106(c), we nonetheless adopt the same broad meaning of the terms "loading" and "unloading" in subsection 3106(2). Those terms encompass activities preparatory to the actual lifting onto or lowering of property. The terms include the complete operation of loading and unloading.

We decide to interpret the terms "loading" and "unloading" in subsection 3106(2) broadly because we find that the Legislature intended that interpretation. The fundamental goal of interpreting statutory language is to identify and give effect to legislative intent. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977). The first step in ascertaining that intent is to review the language in the statute itself. *Spears v City of Hazel Park,* 131 Mich App 457, 461; 346 NW2d 340 (1984).

Section 3106, in subsection (1)(b), limits in express terms the meaning of "loading" and "unloading". Subsection (2) does not have such limiting language. Obviously, the Legislature did not intend the terms "loading" and "unloading" in subsection (2) to have the same meaning. Had it so intended, the Legislature could have written subsection (2) with similar limiting language.

We are futher convinced that a broad interpretation of "loading" and "unloading" is appropriate

after a review of the legislative purpose and history of the amendment adding subsection (2), 1981 PA 209. See *People v Hall,* 391 Mich 175, 191; 215 NW2d 166 (1974); *Kizer v Livingston County Bd of Comm'rs,* 38 Mich App 239, 247; 195 NW2d 884 (1972). The House Legislative Analysis Section's report on the proposed amendment states that the trucking industry lobbied for this amendment because it claimed its insurance rates were climbing due to the commonplace incidents of disabling injuries occurring during the loading, unloading, and mechanical servicing of its vehicles. Under former § 3106, its injured employees collected both workers' compensation and no-fault benefits. In support of the amendment, the Legislative Analysis Section asserted that injured truck-line industry workers who happened to be loading or unloading freight away from a vehicle could only collect workers' compensation, while similar employees suffering the same type of disabling injury while actually loading or unloading a vehicle could get double recovery. Thus, the former § 3106 unfairly provided an extra source of recovery for a work-related injury to a select few truck-industry workers. Moreover, "workers' compensation insurance was intended as the sole and exclusive remedy for employees hurt on the job, and that when those benfits are available no-fault insurance coverage ought not to apply". Analysis of House Bill 4524 (February 5, 1982).

We conclude that the Legislature intended to eliminate duplication of benefits for work-related injuries except where the actual driving or operation of a motor vehicle is involved. Therefore, we find it appropriate to broadly interpret the terms "loading" and "unloading" in subsection (2) because by doing so the statute further eliminates duplication of benefits for work-related injuries

that do not relate to the actual driving or operation of a motor vehicle.

In these cases, the parties do not disagree on the facts. They only disagree as to whether plaintiffs' activitites constituted "unloading" within the meaning of subsection 3106(2). There is no dispute that plaintiffs' activities were preparatory to the actual unloading or delivery of property. Therefore, we find that there is no material question of fact that such activity was "unloading" within the meaning of subsection 3106(2). Thus, the trial court erred by denying defendants' motions for summary judgment on these grounds.

### III

Both plaintiffs raise constitutional arguments against subsection 3106(2) for the first time on appeal. We decline to address these questions because the plaintiffs failed to seek lower court review of them, *May v Leneair*, 99 Mich App 209, 216; 297 NW2d 882 (1980), and failed to file cross-appeals. GCR 1963, 807.1. We note that this Court recently rejected similar arguments in *Babbit v Employers Ins of Wausau*, 136 Mich App 198; 355 NW2d 635 (1984).

### IV

Plaintiff Jones argues in his brief on appeal that, should this Court decide he was unloading within the meaning of subsection 3106(2) or reverse the trial court's grant of reconsideration, this Court should decide that the circuit court on remand has the jurisdiction to determine whether he was eligible for compensation benefits. This issue is not properly before us on cross-appeal, even though the trail court arguably certified the

question. GCR 1963, 807.1. However, we address the issue in the interest of judicial economy.

MCL 418.841; MSA 17.237(841) provides in part:

"Any controversy concerning compensation shall be submitted to the bureau and all questions arising under this act shall be determined by the bureau."

In *Herman v Theis,* 10 Mich App 684, 690; 160 NW2d 365 (1968), *lv den* 381 Mich 772 (1968), this Court stated:

"Jurisdiction for the determination of those issues concerning exclusiveness and conditions of liability initially must lie with the compensation department."

Pursuant to the above provisions, it appears defendant ATL correctly argued below that plaintiff must be compelled to file with Michigan's Bureau of Workers' Compensation. However, we disagree that the circuit court did not have jurisdiction to decide whether Jones was eligible for no-fault benefits pursuant to subsection 3106(2) without first filing a claim with the Workers' Disability Compensation Bureau. In *Wolf v Ethyl Corp,* 124 Mich App 368, 369-370; 335 NW2d 42 (1983), this Court said:

"MCL 418.845; MSA 17.237(845), provides:
" 'The bureau shall have jurisdiction over all controversies arising out of injuries suffered outside this state where the injured employee is a resident of this state at the time of injury and the contract of hire was made in this state. Such employee or his dependents shall be entitled to the compensation and other benefits provided by this act.'
"This section plainly says that in order for the Bureau of Workers' Disability Compensation to acquire jurisdiction over an out-of-state injury, the injured employee must *both* be a resident of Michigan at the time of the

injury and have concluded a contract for hire in Michigan.

"The statute is clear and unambiguous." (Emphasis in original.)

ATL does not dispute that Jones' accident occurred in Ohio or that Jones was, in fact, a resident of Ohio at the time of the accident. Therefore, from the clear and unambiguous language of § 845 of the Worker's Disability Compensation Act, the bureau does not have jurisdiction over this out-of-state work-related injury. Therefore, the trial court erred by previously granting ATL's motion for an order compelling Jones to file a petition for Michigan workers' compensation benefits. The trial court has jurisdiction to decide whether Jones is entitled to no-fault benefits pursuant to § 3106.

## CONCLUSION

The terms "loading" and "unloading" found in subsection 3106(2) of the no-fault act, MCL 500.3106(2); MSA 24.13106(2), encompass acts greater than the actual lifting onto or lowering of property. Those terms also encompass activities that are preparatory to the actual lifting onto or lowering of property. Because there is no factual dispute that the plaintiffs' activities at issue in these cases was preparatory to the lowering of property, they were "unloading" within the meaning of subsection 3106(2). Therefore, the trial court in *Bell* erred by failing to grant defendant Boutell's motion for summary judgment and the trial court in *Jones* erred by granting plaintiff's motion for reconsideration.

We decline to address plaintiffs' constitutional issue because it was not preserved for appeal in either case.

The Workers' Disability Compensation Bureau does not have jurisdiction over Jones' work-related disablement claim because it is undisputed that Jones' accident occurred in Ohio and that he was not a resident of Michigan at the time of his accident. Therefore, the trial court in *Jones* has the jurisdiction to decide whether Jones is eligible for no-fault benefits pursuant to § 3106 of the no-fault act.

Reversed and remanded.