## GIBBS v UNITED PARCEL SERVICE

*Docket No. 85931. Submitted May 22, 1986, at Detroit. Decided
October 7, 1986.*

Donna Gibbs brought an action in the Wayne Circuit Court
against United Parcel Service and Liberty Mutual Insurance
Company seeking to recover no-fault insurance benefits for an
injury that occurred when she, a clerk for UPS whose job was
loading packages into trailers at the UPS warehouse, had just
finished stacking packages inside a trailer, was moving toward
the back of the trailer so that she could exit, and tripped on a
loose package and fell to the trailer floor. She received workers'
compensation benefits as a result of the accident. The trial
court, Robert L. Evans, J., granted defendants summary dispo-
sition after concluding that plaintiff was "loading" the trailer
at the time of her injury, so that the parked vehicle provision
of the no-fault act barred her claim. Plaintiff appeals.

The Court of Appeals *held:*

1. Plaintiff was in the process of loading when she was
injured. No future development of the evidence will change this
conclusion, therefore, the trial court correctly granted defen-
dants summary disposition.

2. Like acts in preparation, acts incidental to the completion
of the loading or unloading process fall within the scope of the
parked vehicle provision of the no-fault act.

3. The "complete operation of loading" encompasses walking
toward the exit of a trailer once the property is aboard.

Affirmed.

Insurance — No-Fault Insurance — Loading and Unloading —
      Parked Vehicle.

The terms "loading" and "unloading" a parked vehicle are to be
interpreted broadly to include acts incidental to the completion

References

Am Jur 2d, Automobile Insurance §§ 279-286.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

See also the annotations in the Index to Annotations under Work-
ers' Compensation.

of the loading or unloading process for purposes of subsection 3106(2) of the no-fault act which denies benefits in certain . situations where the injured employee is eligible for workers' compensation benefits as a result of the injury; the complete operation of loading therefore encompasses the process of exiting from a trailer once the goods have been placed aboard (MCL 500.3106[2]; MSA 24.13106[2]).

*Marshall Lasser,* for plaintiff.

*Beresh & Prokopp* (by *Sandra A. Prokopp*), for defendants.

Before: MACKENZIE, P.J., and BEASLEY and C. W. SIMON,* JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting defendants' motion for summary disposition, apparently entered pursuant to MCR 2.116(C)(10). We affirm.

The facts are not in dispute. Plaintiff was employed as a clerk for United Parcel Service. A significant part of plaintiff's job with UPS was loading packages into trailers at the UPS warehouse, a task she performed approximately ten times a day. On August 9, 1982, plaintiff had just finished stacking packages inside a trailer and was moving toward the back of the trailer so that she could exit when she tripped on a loose package, fell to the trailer floor, and injured her knees. As a result of the injury plaintiff filed for and received workers' compensation benefits. Plaintiff also applied to defendants for no-fault insurance benefits. The claim was denied and this suit followed.

The narrow issue in this appeal is whether the trial court erred in concluding that plaintiff was "loading" the trailer at the time of her injury, so that the parked vehicle provision of the no-fault

---

* Circuit judge, sitting on the Court of Appeals by assignment.

act, MCL 500.3106; MSA 24.13106, barred plaintiff's claim. Subsection (2) of that statute provides in part:

> Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle.

Plaintiff contends that she had finished loading the vehicle and was in the process of exiting from the trailer at the time of her accident. Defendants, on the other hand, maintain that exiting from a vehicle after stacking boxes within it is the final act in the loading process.

The construction to be given to the words "loading" and "unloading" within the meaning of subsection 3106(2) of the no-fault act was recently addressed by this Court in *Bell v F J Boutell Driveaway Co,* 141 Mich App 802; 369 NW2d 231 (1985). In *Bell,* Bell drove a load of cars to a dealership and began to prepare for the unloading of the cars he was delivering. He removed chains securing one of the cars to the trailer and was walking on the trailer to another location to remove other chains when he slipped and fell. He received workers' compensation for his resulting injury. Concluding that Bell's claim for no-fault benefits was barred by § 3106, this Court held that the terms "loading" and "unloading" must be broadly construed so as to include activities in

preparation for the actual lifting on or removal of property:

> [T]he general terms "loading" and "unloading" as they appear in insurance contracts have been interpreted by federal courts as meaning the complete operation of loading or unloading, or the entire process of loading and unloading. This broad interpretation encompasses activities preparatory to the actual loading or unloading or delivery. See [*Allstate Ins Co v*] *Valdez* [190 F Supp 893 (ED Mich, 1961)]; *Selective Ins Co v Hartford Accident & Indemnity Co,* 213 F Supp 3 (ED Mich, 1963); *St Paul Mercury Ins Co v Huitt,* 215 F Supp 709 (WD Mich, 1963); aff'd 336 F2d 37 (CA 6, 1964), and *Ford Motor Co v Ins Co of North America,* 494 F Supp 846 (ED Mich, 1980). Although the reasoning for interpreting the terms "loading" or "unloading" in an insurance contract does not apply to the interpretation of those terms in subsection 3106(c) [sic], we nonetheless adopt the same broad meaning of the terms "loading" and "unloading" in subsection 3106(2). Those terms encompass activities preparatory to the actual lifting onto or lowering of property. The terms include the complete operation of loading or unloading. [141 Mich App 808-809.]

Because Bell's activities were part of "the complete operation of loading and unloading" during the course of his employment, he was precluded from collecting no-fault benefits for his injury.

The rationale behind the *Bell* panel's decision to adopt a broad construction of the terms "loading" and "unloading" was one of furthering legislative intent. As noted by another panel of this Court in *Marshall v Roadway Express, Inc,* 146 Mich App 753, 756; 381 NW2d 422 (1985):

> The current statute was primarily enacted because of complaints in the trucking industry that

dock workers, warehouse workers and mechanics were collecting no-fault benefits even though they never drove in their employer's vehicles. As stated in the House Legislative Analysis Section's first analysis of this statute, then House Bill 4524 (February 5, 1982):

"Employers argue that the no-fault act was not put into law to compensate persons injured while working in and around parked vehicles as part of their employment, either loading and unloading vehicles or doing mechanical repair work."

Thus, in enacting § 3106(2), the Legislature intended to eliminate duplication of benefits for work-related injuries except where the actual driving or operation of a vehicle is involved. *Bell, supra,* p 810.

*Bell's* broad definition of "loading" and "unloading" was also applied by this Court in *Gray v Liberty Mutual Ins Co,* 149 Mich App 446; 386 NW2d 210 (1986). There, the plaintiff, a UPS driver whose job was to pick up and deliver packages, was injured at one location while organizing packages within his truck for delivery at the next stop on his route. He received workers' compensation benefits but was denied no-fault benefits under § 3106. This Court affirmed, finding that the plaintiff was "unloading" within the meaning of the statute:

[W]e find that plaintiff's activity on March 28, 1983, was still an act preparatory to the unloading of goods. The rationale articulated in *Bell, supra,* in support of a broad interpretation of the terms "loading" and "unloading", also supports a broad construction of which activities constitute activities preparatory to actual loading or unloading. The intent of subsection 3106(2) is to eliminate duplication of benefits for work-related injuries which do not arise out of the actual driving or operation of the motor vehicle. *Bell, supra,* pp 810-

811. In the instant case plaintiff's injuries did not arise out of the actual driving or operation of his motor vehicle, but arose from activities within the parked vehicle in preparation of unloading at the next stop. Moreover, interpreting plaintiff's activities of March 28, 1983, as activities preparatory to unloading would further the legislative intent in eliminating the duplication of benefits which plaintiff has received for his work-related injuries. Thus we find that the activities of plaintiff on March 28, 1983, were acts preparatory to the actual unloading of packages for delivery and thus fell within subsection 3106(2) as loading or unloading activities in the course of plaintiff's employment. Plaintiff was therefore not entitled to no-fault benefits pursuant to subsection 3106(2) . . . [149 Mich App 451.]

As in *Bell* and *Gray*, we apply a broad definition of the terms "load" and "unload" and hold that, like acts in preparation, acts incidental to the completion of the loading or unloading process fall within the scope of subsection 3106(2). The "complete operation of loading" certainly encompasses walking toward the exit of a trailer once the property is aboard, as the only reason plaintiff was in the trailer in the first place was to load it. It would be logically inconsistent to conclude that while activities preparatory to loading a vehicle should be broadly considered excluded from no-fault coverage, activities immediately after the last box has been stacked should not receive the same broad consideration. If, as in *Gray,* a truck driver who picks up a package that has fallen in the back of his truck (which will be delivered at his *next* scheduled stop) is considered to be engaged in the process of unloading, certainly plaintiff was still in the process of loading when she had stacked the last box and was walking to the back of the truck to exit.

Plaintiff attempts to avoid the above conclusion by relying on this Court's recent decision in *Marshall, supra,* where a truck driver who was unhitching a trailer from his truck at a loading dock and was subsequently injured was not considered to be in the process of unloading his truck. However, that case is distinguishable in that the plaintiff there was not a loading clerk but a truck driver, and after he unhitched the trailer he was going to drive off to pick up another trailer. Here, plaintiff's job was to load trailers and she had just completed stacking boxes in such a trailer when her injury occurred. Unlike in *Marshall,* in the instant case we are confronted with exactly the situation envisioned by the Legislature—a work-related injury unrelated to the operation of a vehicle—and to permit this plaintiff to recover both workers' compensation benefits and no-fault benefits would lead to a result which the Legislature sought to avoid.

Because plaintiff must be considered to have been in the process of loading when she was injured, and no future development of the evidence will change this conclusion, the trial court correctly granted defendants summary disposition.

Affirmed.