**Norman MAHDESIAN, Plaintiff,**

v.

**WAUSAU INSURANCE COMPANY, Defendant.**

**No. 90–CV–70632–DT.**

United States District Court, E.D. Michigan, S.D.

Aug. 13, 1990.

William N. Bradford, Farmington Hills, Mich., for plaintiff.

Michael F. Schmidt, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is currently before the Court on cross-motions for summary judgment. Both parties have responded and the motions are now ripe for review.

## FACTS

Plaintiff brought this suit to obtain no-fault benefits pursuant to the Michigan No–Fault Insurance Act for an injury which occurred on June 1, 1989. Plaintiff's injury occurred while plaintiff was employed as a truck driver for Hankin Transportation Inc.

Plaintiff made an initial stop, as required by the Michigan Department of Transportation, in order to inspect his tractor trailer and his load. According to plaintiff, while driving on I–69, he was informed by another trucker over the CB radio that his chains, which were permanently mounted on his trailer, had come loose and/or were broken. According to plaintiff, he stopped his vehicle and while exiting, slipped and struck his head. Plaintiff claims he laid on the ground for a few minutes and then got back on the trailer to rebind the load. In doing so, plaintiff again slipped and fell, striking his left side and arm on some steel. Plaintiff submits that as a result of this injury, he has become disabled.

Plaintiff has since filed and is currently receiving all benefits due him under the Michigan Workers Disability Compensation Act. Plaintiff has brought this suit to receive no-fault benefits under the exceptions set forth in M.C.L.A. § 500.3106. The main issue before this Court is whether plaintiff is entitled to no-fault benefits.

## STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers,* 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when

the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.*, 806 F.2d 673, 675 (6th Cir.1986). Where the nonmoving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

## LAW

M.C.L.A. § 500.3106 provides:

(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

(2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, or under a similar law of another state or under a similar federal law are available to an employee who sustains the injury in the course of his or her employment while doing either of the following:

(a) Loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. As used in this subdivision, 'another vehicle' does not include a motor vehicle being loaded on, unloaded from, or secured to as cargo or freight, a motor vehicle.

(b) Entering into or alighting from the vehicle unless the injury was sustained while entering into or alighting from the vehicle immediately after the vehicle became disabled. This subdivision shall not apply if the injury arose from the use or operation of another vehicle. As used in this subdivision, 'another vehicle' does not include a motor vehicle being loaded on, unloaded from or secured to, as cargo or freight, a motor vehicle.

Defendant asserts that where an employee is injured on a parked motor vehicle, there can be no recovery of no-fault benefits if the employee has received benefits pursuant to the Michigan Workers Compensation Act and the injury arises out of loading, unloading or mechanical work on the vehicle, or on entering into or alighting from the vehicle. Defendant asserts that since this is how the plaintiff's accident occurred, plaintiff is not entitled to any no-fault benefits because plaintiff is receiving Workers Disability Compensation.

The parties dispute whether plaintiff was engaged in loading and unloading operations at the time of his accident. Defendant asserts that plaintiff was, in fact, engaged in loading and loading operations when his injury occurred. Therefore, defendant claims plaintiff's claim is barred by M.C.L.A. § 500.3106(2)(a). According to defendant, the term loading and unloading is interpreted very broadly. In support of this broad interpretation, defendant cites to several cases. In *Raymond v. Commercial Carriers*, 173 Mich.App. 290, 433 N.W.2d 342 (1988), the plaintiff was employed driving a tractor/trailer of new

cars. Plaintiff would load the cars on the trailer and then unload them again at the destination. While stopped at a rest stop along an interstate, plaintiff checked the chains and found them loose. Plaintiff then climbed up on the side of the trailer in order to tighten the chains and slipped, injuring himself. The Court of Appeals affirmed an entry of summary disposition in favor of the defendant no-fault insurer. In its opinion, the Court of Appeals referred to the case of *Bell v. F.J. Boutell Driveaway Co.*, 141 Mich.App. 802, 369 N.W.2d 231 (1985) and stated that:

> We found it appropriate to broadly interpret the terms 'loading' and 'unloading' to effectuate the legislature's intent to eliminate duplication of benefits (Workers Compensation and No–Fault) for work-related injuries except where the actual driving or operation of a motor vehicle is involved ... in light of the intent behind § 3106 ... and the fact that [plaintiff's] job required loading and unloading the cars from his trailer and that *the process of loading necessarily included insuring that the chains properly secured the vehicles into place,* we believe the trial court erred in finding that [plaintiff's] injuries were not sustained while loading or unloading the trailer.

(Emphasis added). *Raymond,* 173 Mich. App. at 292, 433 N.W.2d 342.

Defendant also cites to *Crawford v. Allstate,* 160 Mich.App. 182, 407 N.W.2d 618 (1987) and *Grady v. City of Detroit,* No. 113013 (Mich.App. Feb. 12, 1990). In both of those cases, the plaintiffs injured themselves by falling off a trailer while trying to tighten chains and/or ropes. In both cases, the courts granted summary disposition in favor of the no-fault insurer by finding that the process of loading involved more than simply putting freight on to the trailer. Instead, the courts found that the loading process also included insuring that the chains properly secured the goods on the trailer.

Plaintiff claims the above-cited cases are distinguishable. Plaintiff claims that he was required to inspect the chains every 150 miles, or every three hours, whichever occurred first. Plaintiff claims this requirement is clearly operational and delivery in nature, and therefore, has nothing to do with loading or unloading. Plaintiff submits that he had nothing to do with the loading of his trailer. Plaintiff claims that the loading took place prior to him leaving with the truck, and therefore, the loading process had long since been finished.

## OPINION

This Court is not persuaded by defendant's attempt to broaden the scope of the terms "loading" and "unloading." As plaintiff has stated, such a broad interpretation of those terms would make the loading and unloading process circular and never-ending. Plaintiff would actually be in the process of loading or unloading regardless of what plaintiff was doing or where his truck was located.

This Court agrees with plaintiff's argument that Norman Mahdesian was neither loading or unloading his vehicle, nor was he doing any mechanical work on the vehicle. To hold otherwise, this Court would be stretching the language of the statute. At some point, loading and unloading of a vehicle must stop so that the vehicle can be operated and the goods delivered.

This Court has carefully reviewed M.C. L.A. § 500.3106 and finds that it is not a model of drafting excellence. The legislature is capable of articulating what activity is exempt from coverage. In this instance, the legislature has used the words loading and unloading in order to articulate its exemption intent. This Court has interpreted those terms in a commonsense fashion and finds that plaintiff was not in the process of loading or unloading at the time of his injury.

The loading and unloading of steel is a technical job. It takes a certain amount of expertise and precision. Plaintiff did not personally load the steel on his truck, nor would he have been capable of doing so. As a result, plaintiff had no duty or responsibility to load or unload his vehicle. As plaintiff has correctly asserted, the loading process was finished when plaintiff drove

his truck out onto the road. Instead of loading, plaintiff was engaged in operating his truck and delivering the steel.

This interpretation of the terms loading and unloading is the most logical and reasonable one available. The Court is not persuaded by defendant's argument that the statute was intended to be interpreted broadly so as to prevent double recovery. No evidence of such a broad interpretation of the terms loading and unloading exists in the statute and courts should not be placed in the position of having to guess what the legislature intended.

Moreover, this Court is not persuaded by the cases cited to by defendant. In *Raymond (supra)* and *Crawford (supra)*, the plaintiffs were responsible for personally loading and unloading cars onto tractor-trailers. The plaintiffs were also responsible for properly securing their cargo. In *Grady (supra)*, the plaintiff was responsible for filling and securing tanks on the truck. The plaintiff in *Grady* was also the repair mechanic. This Court finds that these facts alone distinguish those cases from the facts surrounding this instance. As previously noted, plaintiff had absolutely nothing to do with loading or unloading. Plaintiff could not have physically loaded or unloaded his steel. Nor was plaintiff responsible for initially securing his load.

In *St. Paul Mercury Ins. Co. v. Huitt*, 336 F.2d 37 (6th Cir.1984), the plaintiff was injured by a falling boom being used to unload cement from a ready-mix concrete truck. This accident clearly occurred during the unloading process. Accordingly, this Court finds that the *St. Paul* court's broad interpretation of unloading is inapplicable in this instance.

## CONCLUSION

Based upon the foregoing, this Court finds no genuine issues of material fact exist. Plaintiff was not in the process of loading or unloading at the time of his injury. As a result, plaintiff is entitled to a judgment as a matter of law. Therefore, this Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment.

Plaintiff is hereby ORDERED to submit a judgment in accordance with this order within five (5) days.

IT IS SO ORDERED.