JERVIS B WEBB COMPANY v EVEREST NATIONAL
INSURANCE COMPANY

Docket No. 231798. Submitted June 11, 2002, at Detroit. Decided June 21,
2002, at 9:05 A.M.

Safeco Insurance Company of America brought an action in the
Wayne Circuit Court against Dale G. Kennedy & Sons Warehouse
(Kennedy), Jervis B. Webb Company (Webb), Everest National
Insurance Company (Everest), and others, seeking a declaration
that it has no duty to defend or indemnify Webb with respect to a
wrongful death action brought by the personal representative of
the estate of Michael Beach, deceased, a Kennedy tractor truck
driver who sustained fatal injuries on Kennedy's premises after
towing from Webb's premises a flatbed trailer leased by Webb from
Kennedy. Beach was struck by cargo manufactured and loaded on
the flatbed trailer by Webb employees. Webb and its insurers, who
had settled the wrongful death action against Webb, filed a cross-
claim against Everest, one of Kennedy's automobile liability insur-
ers, seeking contribution or indemnification for the settlement paid
in the wrongful death action. In their cross-claim, Webb and its
insurers claimed that Webb was an insured under the Everest pol-
icy pursuant to a provision in the policy that defines "insured" to
include "[a]nyone else while using with your permission a covered
'auto' you own, hire or borrow." On cross-motions for summary dis-
position of the cross-claim, the court, William J. Giovan, J., granted
summary disposition for Everest, ruling that Webb was not "using"
Kennedy's trailer at the time of the fatal accident and that the Ever-
est policy provided no coverage to Webb or right of indemnifica-
tion or contribution to Webb and its insurers. Webb and its insurers
appealed.

The Court of Appeals *held*:

The "coming to rest" doctrine and the "complete operation" doc-
trine guide in the determination whether the loading and unloading
of a vehicle constitutes use of the vehicle for purposes of liability
insurance. Under the "coming to rest" doctrine, loading and unload-
ing are construed restrictively to include only those activities
beginning with the actual movement of the goods onto the insured
vehicle and ending when the goods have been removed from the

vehicle and have first come to rest. The "complete operation" doctrine expands the loading and unloading process to include the entire process involved in the movement of goods from the moment they begin their movement toward the insured vehicle to be placed therein until they have been turned over at the place of destination to the party to whom the delivery is to be made.

Assuming the applicability of either doctrine to this case, the distinction between the two approaches is insignificant under the circumstances of this case. Under either analysis, Webb's loading process was finished before the fatal accident. Thus, Webb was no longer "using" the trailer within the meaning of the omnibus insured provision of the Everest policy.

Affirmed.

AUTOMOBILES — LIABILITY INSURANCE — USE OF VEHICLE — LOADING AND UNLOADING.

An automobile insurance policy providing liability coverage for the loading and unloading of the insured vehicle to a person using the vehicle with the owner's permission ceases to provide coverage once the loading or unloading is completed and the vehicle is in motion.

*Garan Lucow Miller, P.C.* (by *Robert D. Goldstein* and *Mark Shreve*), for Jervis B. Webb Company and others.

*Condit, McGarry & Schloff, P.C.* (by *Michael F. Condit*), for Everest National Insurance Company.

Before: NEFF, P.J., and GRIFFIN and TALBOT, JJ.

GRIFFIN, J. Cross-plaintiffs/appellants Jervis B. Webb Company (Webb), Indemnity Insurance Company of North America (IINA), and Westchester Insurance Company (Westchester) (hereinafter referred to collectively as "the Webb appellants") appeal as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of cross-defendant/appellee Everest National Insurance Company (Everest) in this declaratory judgment action to determine the rights and obligations of the parties pursu-

ant to a commercial automobile insurance policy issued by Everest to a third party, Kennedy & Sons Warehouse (Kennedy). We affirm.

This case has its origins in the unfortunate death of a Kennedy employee. The facts of the underlying action are not in dispute. On August 9, 1996, Webb employees loaded conveyor parts that Webb manufactured onto a flatbed trailer. The loading was conducted at Webb's facility in New Hudson, Michigan, in preparation for shipment to a Chrysler Corporation assembly plant in Newark, Delaware. When Webb employees had completed the loading of the conveyor parts, Webb moved the trailer from its loading dock to a different location in the yard on its premises to await pickup by Kennedy, the company that would then transport the Webb products on the way to their final destination. After moving the trailer into the yard, Webb had no further contact with the trailer.[1]

The following day, August 10, 1996, Michael Beach, a truck driver employed by Kennedy, drove a Kennedy-owned tractor to Webb's facility to pick up the loaded trailer. Beach hooked his tractor to the trailer and returned to Kennedy's warehouse yard. At the yard, the securing straps were to be taken off the load and then new straps would be resecured by an

---

[1] The trailer on which Webb loaded the conveyor parts was one of five empty trailers that Kennedy maintained at the Webb facility. Kennedy rented the trailers to Webb at a rate of $25 a day for each trailer. This arrangement was made so that Webb could have trailers available on site for loading. Whenever Kennedy picked up a loaded trailer, it would drop off an empty trailer so that Webb continued to maintain five empty flatbeds. Under this agreement, Webb rented the trailers that were on its property. The particular trailer on which Webb loaded these conveyor parts was actually owned by Xtra Leasing, rented by Kennedy, and in turn rented to Webb.

employee of an interstate carrier.[2] While Beach was removing the last strap on the trailer, a large conveyor piece loaded by Webb fell and fatally struck him.

Connie Beach, as personal representative of the estate of Michael W. Beach, deceased, initiated a wrongful death action against Webb, alleging that Webb was negligent in the loading of the conveyor parts onto the trailer. The wrongful death action was ultimately settled for the composite sum of $1.5 million: Webb paid its self-insured portion of $150,000, its primary insurer IINA paid $850,000, and Webb's umbrella carrier, Westchester, paid $580,000 in the form of a structured settlement.

The present declaratory judgment action was commenced by one of Kennedy's other insurers, Safeco Insurance Company of America (Safeco), against the Webb appellants, alleging that it had no duty to defend or indemnify Webb for the Beach action under either of its policies issued to Kennedy: a commercial general automobile liability policy and a hired auto and nonowned automobile liability endorsement. Safeco also sought declaratory relief against Everest, identifying Everest as the automobile insurance carrier for Kennedy. The Webb appellants cross-claimed against Everest, seeking to recover through contribution or indemnification a portion of the settlement proceeds paid in the underlying action. The Webb appellants maintained that Webb was an additional

---

[2] The changing of the straps was necessitated by the fact that this particular load was to be an interstate haul to Delaware. Because Kennedy only hauls loads within Michigan, another company, a licensed interstate carrier, would complete the interstate portion of this haul. The purpose of changing the straps was to allow the transfer of this particular load from Kennedy to the interstate carrier.

insured under the Everest commercial automobile policy issued to Kennedy, which covered "anyone while using with your permission a covered 'auto' you own, hire or borrow." The Webb appellants also counterclaimed against Safeco, asserting a similar cause of action.

The parties to the declaratory judgment action filed cross-motions for summary disposition. Shortly before the scheduled motion hearing, Safeco settled its claim with the Webb appellants.[3] Consequently, the hearing in circuit court focused on the "additional insured" issue between Everest and the Webb appellants. The trial court, following oral argument, ultimately denied the Webb appellants' motion for summary disposition and granted Everest's similar motion under MCR 2.116(C)(10), holding that, as a matter of law, Webb was not "using" Kennedy's trailer at the time of the fatal accident and thus the Everest policy provided no coverage to Webb, or resultant right to indemnification, in the underlying wrongful death action. This appeal followed.

On appeal, the Webb appellants contend that the trial court erred in denying their motion for summary disposition with respect to Everest and in granting summary disposition in favor of Everest. This Court reviews a trial court's grant of a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201

---

[3] We agree with Everest that to the extent the Webb defendants imply on appeal that Safeco's settlement (and also the settlement with United National Insurance Company, Kennedy's excess insurer) is somehow indicative of the issues between Everest and Webb, it is not; Safeco, Everest, and United National all issued different insurance policies with different coverage provisions. Further, their interests are not aligned.

(1998). When reviewing a motion brought pursuant to MCR 2.116(C)(10), this Court reviews the documentary evidence in the light most favorable to the party opposing the motion to determine whether a party was entitled to judgment as a matter of law or whether a genuine issue of material fact exists. *Id.* In addition, the interpretation of the language of an insurance contract is an issue of law subject to review de novo. *Morley v Automobile Club of Michigan,* 458 Mich 459, 465; 581 NW2d 237 (1998).

> An insurance policy is a contract that should be read as a whole to determine what the parties intended to agree on. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566; 489 NW2d 431 (1992). In interpreting insurance policies, we are guided by well-established principles of construction. *Allstate Ins Co v Keillor (After Remand),* 450 Mich 412, 416-417; 537 NW2d 589 (1995); *Michigan Millers Mut Ins Co v Bronson Plating Co,* 445 Mich 558, 567; 519 NW2d 864 (1994). The policy must be enforced in accordance with its terms; therefore, if the terms of the contract are clear, we cannot read ambiguities into the policy. *Farm Bureau Mut Ins Co of Michigan v Nikkel,* 460 Mich 558, 566; 596 NW2d 915 (1999); *Bronson Plating Co, supra.* [*McKusick v Travelers Indemnity Co,* 246 Mich App 329, 332-333; 632 NW2d 525 (2001).]

Where an insurance policy does not specifically define a word or phrase, the commonly used meaning of the word or phrase is to be used. *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 113-114; 595 NW2d 832 (1999). The omission of a definition of a word in an insurance policy that has a common usage does not create ambiguity. *Fitch v State Farm Fire & Casualty Co,* 211 Mich App 468, 471; 536 NW2d 273 (1995). Clear and specific provisions that limit coverage must be given effect because an insurance com-

pany cannot be held liable for a risk that it did not assume. *Churchman, supra* at 567.

In the instant case, the parties agree that the material facts are not in dispute. Thus, this Court need not address issues concerning the admissibility of evidence or the credibility of witnesses or documents. Rather, this Court must determine whether the trial court correctly held, as a matter of law, that Webb was not "using" Kennedy's trailer, within the meaning of the Everest insurance policy, at the time of Michael Beach's fatal accident.

The pertinent provisions of Everest's policy provide:

> Section ii—liability coverage
>
> A. COVERAGE
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
>         *        *        *
>
> 1. WHO IS AN INSURED:
>
> The following are "insureds":
>
> a. You for any covered "auto."
>
> b. *Anyone else while using with your permission a covered "auto" you own, hire or borrow* except: . . . . [emphasis added.][4]

A permissive use can be inferred from the circumstances or the parties' practice. See, e.g., *Reliance Ins Co v Hawkeye Security Ins Co*, 155 Mich App 675; 400 NW2d 310 (1986). In this case, Webb and Kennedy had a verbal agreement that Kennedy would lease five

---

[4] The exceptions under § II, (A)(1)(b) are inapplicable.

trailers to Webb so that Webb could load the trailers as needed. These trailers were within the control and use of Webb while they were maintained at Webb's site. Appellants argued to the trial court and now to this Court that although Webb was not a named insured under the Everest policy, Webb should be considered an omnibus insured under the Everest policy because at the time of the accident Webb was "using," with Kennedy's permission, "a covered 'auto' " that Kennedy had rented to fulfill its contractual commitments with Webb; because Webb loaded the trailer and the trailer was being used to transport Webb products when the accident occurred, coverage should be afforded to Webb.

Everest, on the other hand, does not dispute that Webb loaded the trailer and that certain loading activities can constitute the "use" of a vehicle under Michigan law. However, Everest argues that Webb was no longer "using" the trailer at the time of the fatal accident because Webb had relinquished custody and control of the trailer; once the conveyor parts were at rest on the trailer, the "loading" was complete. Everest maintains that it would be a contortion of the term "use" to include within its scope circumstances that were temporally and geographically removed from Webb—the accident occurred a full day after any Webb representative last touched the trailer and on Kennedy's premises when Webb was not present. The trial court agreed with Everest, stating in its oral ruling granting Everest's motion for summary disposition:

> Okay. I don't think it's a close case. These things are supposed to be construed according to their ordinary English usage and understanding. No layman would think that Webb

was using this vehicle. It's that simple. The idea of use generally connotes somebody getting in the vehicle and driving it.

Now, I admit that sometimes that concept is expanded, but it's usually expanded in the law under phrases in automobile policies such as for an occurrence arising out of the ownership, use, loading or unloading of the vehicle. That's when it gets extended.

\*      \*      \*

This doesn't have [that] language. And I have to disagree with [appellants'] counsel, it does have a temporal restriction. The restriction is the word "while." While, during, as opposed to arising out of. They weren't using it any longer.

The liability of Webb, I presume, such as it is, emanates from some activity that—something they did at their premises while, I suppose, or during the process of loading the vehicle. But no employee of Webb was driving it at the time of the incident, which would be the characteristic example of use of the vehicle, or towing it or pushing it or doing anything else with it. They just weren't there.

I think you have to twist this language out of shape to say that they were using it at the time of this incident. And you'll excuse me if it seems that simple to me, but I think that the language is supposed to mean something, and the ordinary usage of this language indicates that it wasn't being used.

We agree with the sound reasoning of the trial court.

Although the general issue of a permissive "use" of a vehicle is not a novel one in Michigan, our courts have not had occasion to address this issue in the present context. Typically, the question whether the "use" of a vehicle includes loading or unloading involves the interpretation of either statutory provisions governing automobile insurance, such as § 3106 of Michigan's no-fault insurance act, MCL 500.3106, or insurance policies that contain "loading and unload-

ing" clauses. See, e.g., *Gibbs v United Parcel Service,* 155 Mich App 300; 400 NW2d 313 (1986). In such instances, the courts have focused on whether loading or unloading had begun or ceased at the time of the accident.

Two doctrines have been developed as guides in such a determination—the "coming to rest" doctrine and the "complete operation" doctrine. See, generally, *Risks within "loading and unloading" clause of motor vehicle liability insurance policy,* 6 ALR4th 686 (and cases cited therein). According to the "coming to rest" doctrine, loading and unloading are construed restrictively to include only those activities beginning with the actual movement of the goods onto the insured vehicle and ending when the goods have been removed from the vehicle and have first "come to rest." *Id.* The broader "complete operation" rule expands both the loading and unloading process to include the entire process involved in the movement of goods from the moment they begin their movement toward the insured vehicle to be placed therein until they have been turned over at the place of destination to the party to whom the delivery is to be made. *Id.* This latter, more prevalent approach has been adopted by the federal courts and by this Court, albeit in contexts that are inapposite to the present circumstances because such cases involve the interpretation of specific statutory language or policy provisions that differ from the omnibus clause at issue herein. See, e.g., *St Paul Mercury Ins Co v Huitt,* 336 F2d 37 (CA 6, 1964), *Allstate Ins Co v Valdez,* 190 F Supp 893 (ED Mich, 1961), *Thompson v TNT Overland Express,* 201 Mich App 336; 505 NW2d 918 (1993), *Gibbs, supra, Gray v Liberty Mut Ins Co,* 149

Mich App 446; 386 NW2d 210 (1986), and *Bell v F J Boutell Driveaway Co*, 141 Mich App 802; 369 NW2d 231 (1985).

Assuming the applicability of either of the above doctrines to the present case, we conclude that the distinction between the two approaches is insignificant under the circumstances: under either analysis, Webb's loading process was finished before the fatal accident and, therefore, Webb was no longer "using" the trailer within the meaning of the omnibus insured provision of Everest's policy.

In so concluding, we agree with Everest that of the numerous cases cited by the parties in support of their respective positions, only one case is sufficiently analogous to the present circumstances to be of guidance in resolving the issue at hand. In *Florida Crushed Stone Co v Commercial Standard Ins Co*, 432 So 2d 690 (Fla App, 1983), the driver of a tractor trailer unit brought suit against Florida Crushed Stone Company (Crushed Stone) and its insurance carrier, American Mutual Liability Company (American Mutual), after he was injured when the tractor trailer, loaded with limerock, overturned. The driver alleged that employees of Florida Crushed Stone had improperly loaded the trailer, thereby causing the unit to overturn and injure him. Crushed Stone and American Mutual then filed a third-party action against the insurer of the driver's trailer, Commercial Standard Insurance Company (Commercial), claiming that its policy provided coverage to Crushed Stone for the alleged negligent loading of the trailer. The Commercial policy excluded coverage for "[b]odily injury . . . resulting from the loading of property before it has been put in or on the covered auto or the unloading

of property after it has been taken off or out of the covered auto." [*Id.* at 691.]

Similar to the Everest insurance policy involved herein, the Commercial policy further defined insured as "[a]nyone else is an insured while using with your permission a covered auto . . . ." *Id.* Addressing the question whether by its involvement in loading the trailer Crushed Stone was "using" it within the meaning of the policy issued by Commercial to the insurer of the trailer, the District Court of Appeals of Florida concluded:

> In reaching a decision it is important to note that the policy did not expand "use" by addition of the phrase "including loading and unloading thereof" which is contained in some policies.

> \*       \*       \*

> It is undisputed that Crushed Stone's loading of the trailer was with the permission of an insured, and that the loading and hauling of cargo was an intended use of the insured trailer. The court determines and holds that Commercial's policy, by its exclusion clause referred to above, did cover and insure "loading and unloading" of the trailer except as excluded, i.e., before being placed on the trailer or after being removed. Neither limitation is material here because the cargo had been placed on the trailer and had not been removed at the time of the accident.

> \*       \*       \*

> Although the [trial] court was concerned here with loading and unloading as an exclusion, it is implicit in the quoted language that *once the operation of either loading or unloading is completed and the vehicle is in motion (use) by the insured, a person claiming to be an omnibus insured is no longer covered by the vehicle policy.*

> \*       \*       \*

> The court thereupon finds that in order for a third party to claim coverage under the "loading and unloading" clause of a motor vehicle policy he must first fall within the definition of "use," that is, merely loading and unloading a vehicle does not, in and of itself, constitute "use" of that vehicle. To hold otherwise would place a strained interpretation upon the intent of the parties to the contract.
>
> The court finds that Jernigan [insured under Commercial policy] and Commercial did not intend to protect Crushed Stone when they entered into their insurance contract, and that therefore no coverage is afforded to Crushed Stone under the Commercial policy. [*Id.* at 691-693 (emphasis added).]

We find the rationale of the Florida court to be persuasive and applicable to the present case, which is closely analogous not only from a factual standpoint but in terms of the policy language at issue. Here, it is clear that Webb's loading process was complete and that the tractor-trailer was en route to its interstate destination when the fatal accident occurred. After the trailer had been loaded, a Webb employee moved the trailer into the yard and Webb had no further contact with the trailer. In fact, the trailer remained untouched by Webb personnel until Beach arrived the next day and took the load to Kennedy's premises. Because Webb's loading activities were undisputedly completed the day before Kennedy's driver, Beach, picked up the trailer, we conclude that Webb stopped "using" the trailer within the meaning of the omnibus "insured" clause contained in the Everest policy long before the fatal accident. The fact that the trailer was not on Webb's premises at the time of the accident only serves to highlight Webb's lack of "use" of the trailer. To conclude otherwise would unduly strain

the intent of the parties to the insurance contract, Kennedy and Everest.

We therefore conclude that the trial court did not err in granting summary disposition in favor of appellee Everest and denying the Webb appellants' similar motion. Because Webb was not "using" Kennedy's trailer at the time of Beach's fatal accident, Kennedy's insurance policy with Everest does not provide coverage to Webb for its alleged liability to Beach's estate. The Webb appellants are consequently not entitled to contribution or indemnification from Everest.

Affirmed.